STRANG v. RICHMOND, P. & C. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 331.

1. EQUITY PLEADING—DUE FORM—FILING BOTH DEMURRER AND ANSWER TO SAME PORTION OF BILL.

The filing by a defendant at the same time of a general demurrer to the bill and answer denying all the allegations of fact made in the bill is not pleading in due form, and in such case the demurrer will be treated as overruled by the answer.

2. EQUITY—JURISDICTION—BREACH OF CONTRACT.

. A bill alleging the existence of a contract by which plaintiff was to construct a railroad for defendant, and its breach by defendant in refusing to allow plaintiff to proceed in its execution, states no ground for relief in equity, but the remedy is by an action at law for damages; and until the damages have been so ascertained, and the legal remedy exhausted, equity cannot entertain jurisdiction to aid in enforcing their payment, although the defendant is alleged to be insolvent.

3. LIENS—CREATION BY CONTRACT.

A contract by which plaintiff agreed to build a railroad for defendant, a railroad company, and was to receive in payment bonds of the defendant, which it was authorized to issue, or their proceeds, not less than a certain amount, does not give the plaintiff a lien on the bonds, which remained in the possession of defendant.

4. SPECIFIC PERFORMANCE—CONTRACT TO BUILD RAILROAD.

A contract to build a railroad cannot be specifically enforced in equity, nor will the court undertake to enforce performance by the railroad company indirectly by impounding its bonds, alleged to have been appropriated by the contract to pay for the work, at suit of the contractor, while the contract is still unperformed on his part.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This case comes up on appeal from a decree of the circuit court of the United States for the Eastern district of Virginia, in equity. 93 Fed. 71. The bill is filed by William B. Strang, Jr., against the Richmond, Petersburg & Carolina Railroad Company and others. The nature of the appeal renders it necessary to set out somewhat in detail the allegations of the pleadings. The bill sets out the corporate character of the defendant, a corporation under the laws of Virginia and of North Carolina, with authority to acquire all the property and works of the Virginia & Carolina Railroad Company, a company organized for the purpose of locating, constructing, equipping, maintaining, and operating a railroad from Richmond to a point on the line between North Carolina and Virginia, in Mecklenburg county, and authorized to extend, construct, equip, and operate its road from any point on the Virginia line to such point on the Raleigh & Gaston Railroad as should be found meet and practicable. It then alleges: That for the purpose of paying for rights of way, station grounds, and all other necessary lands and real estate, and for constructing, acquiring, completing, and equipping the lines of railway aforesaid, or which it should thereafter be authorized by law to construct, own, and acquire, the said Richmond, Petersburg & Carolina Railroad Company executed a mortgage to the Mercantile Trust Company of Baltimore, dated September 11, 1897, to secure certain bonds and coupons, the total issue of bonds not to exceed $2,300,000; bonds to be payable in 1947; interest at 5 per cent. per annum. That said mortgage conveyed to the trust company, in trust as aforesaid, all its line of railway and property described as follows: "Commencing at a point at or near Hermitage road, on the Richmond, Fredericksburg & Potomac Railroad, near the city of Richmond, in the state of Virginia, which is to proceed via Richmond and Petersburg to a

point at or near Ridgeway, in the state of North Carolina, which said main line of railway is one·hundred and three (103) or more miles in length; and all second or additional tracks which the railroad now owns, or may hereafter construct or acquire; and all lands, tenements, and hereditaments; acquired or appropriated, or which may hereafter be acquired or be appropriated, for right of way, and all easements and appurtenances thereto belonging; and all railways and rights of way, depot grounds, tracks, bridges, viaducts, culverts, fences, and other structures, depots, station houses, engine houses, car houses, freight houses, wood houses, warehouses, machine shops, work shops, erections, and fixtures, whether now held or hereafter acquired, for the use of or in connection with the said main line or branches; also all locomotives, tenders, cars, and other rolling stock and equipment; all rails, ties, chairs, splice and angle bars, and machinery, tools, implements, fuel, and materials of every description, whether now owned or hereafter acquired, used, or acquired for the construction, operation, repair, or replacement of said main line and branches; also all leases, leasable interests, contracts, agreements, corporate franchises, and charters which it has now or may acquire, including the franchises to be a corporation; also all franchises connected with or relating to said main line and branches, or the construction, maintenance, or use thereof, now held or hereafter acquired by grant from the legislature or otherwise, including all corporate franchises exercised or possessed at any time by the railroad company, together with the income, advantages, and appurtenances in any way appertaining to the above-mentioned railway premises; and also all the income, tolls, rents, issues, and profits of said main line and branches." That thereafter, to wit, on October 18, 1898, the railroad company entered into an agreement with plaintiff whereby the said plaintiff agreed to construct, furnish, and build a complete roadbed between Ridgeway, N. C., a point on the Raleigh & Gaston Railroad, and Hermitage road, Virginia, on the line of the Richmond, Fredericksburg & Potomac Railroad, a distance of about 103 miles, together with the necessary depots, water stations, section houses, buildings, and terminals, in consideration of which the defendant agreed to pay the plaintiff in its aforesaid bonds secured by the said mortgage, to an amount provided for therein, or in cash representing the proceeds of said bonds, which should not be less than $1,800,000. That the Richmond, Petersburg & Carolina Railroad Company also agreed that that part of its railroad between the points aforesaid, then completed, as well as that part nearly completed, should be turned over to plaintiff, with the right to issuance of bonds therefor under the aforesaid mortgage; and that plaintiff agreed, out of said bonds or the proceeds thereof, to reimburse the said defendant railroad for all sums expended by it on construction, evidenced by its receipted vouchers therefor. That defendant railroad company· further agreed that plaintiff should have full control of the engineering of said railroad and the construction thereof, and the right to purchase all lands necessary therefor, as well as material and supplies; and further agreed to furnish plaintiff, to assist him in completion of the undertaking, all the necessary plans, specifications, drawings, engineers' reports, surveys, and data then in possession of defendant company. That defendant further agreed that the cost of construction of the road, as well as the equipment thereof, and the terminal facilities required, should not exceed the sum to be produced by sale of the bonds, $1,800,000, less $100,000, to be paid to the Colonial Construction Company; but that the cash derived from the sale of the bonds, not less than the sum stated, would be sufficient to construct the road so far as the same was then uncompleted, and leave a fair and reasonable profit to plaintiff in addition thereto. The bill then charges: That De Witt Smith, a defendant, as president of the company, had knowledge of this contract, and then had and now has vested in him titles to the various terminal properties in Virginia and North Carolina, and contracts therefor, as well as for rights of way, all of which he holds in his own name, but in fact in trust for the railroad company, in which plaintiff has an interest and right under his contract with the railroad company. That various of the bonds secured by the deed to the Mercantile Trust Company are now in possession of the railroad company, and that said company has the right to demand certification of other bonds on completion of the work and on acquiring title to rights of way and terminals:

all of which bonds, or the proceeds thereof, are to become, upon the completion of the aforesaid work by plaintiff or the acquirement of title, the property of plaintiff. That upon making the agreement with defendant railroad company the plaintiff entered into possession of said line of railroad, and is now in possession thereof, and is now and has been engaged in the preliminary work of construction thereof. That the plaintiff has demanded the delivery of the plans and specifications in possession of defendant, but it has refused to deliver the same. That this refusal has damaged the plaintiff, and has prevented him from placing his contracts for necessary bridges, ironwork, mason work, and other necessary contracts for completion of said railroad. That since the agreement was made, the railroad company and Smith, without the consent of plaintiff, are endeavoring and are threatening to cancel the mortgage and the bonds secured thereby upon which plaintiff relies as his security for payment of the construction of the railroad, and which bonds have been pledged and set apart as a fund for the payment of the sums to become due to plaintiff for construction of the railroad. That plaintiff is now, and has always been, ready and willing to complete and perform said agreement, and has entered upon the performance thereof, and is now in possession of said property, engaged in work thereon. After praying subpoena, this is the prayer of the bill: "The plaintiff, therefore, prays for a decree enjoining the defendant the Richmond, Petersburg & Carolina Railroad Company and the Mercantile Trust Company from canceling said mortgage or the bonds, or any of them, secured by the same; adjudging that the defendant De Witt Smith holds the title of all terminals and rights of way along the line of said railroad, as well as all contracts therefor, as trustee for said railroad, and that an injunction issue restraining him from parting therewith, and compelling him to transfer the title thereto to the defendant the Richmond, Petersburg & Carolina Railroad Company, and that said defendant railroad be enjoined from interfering in any manner, pending the hearing and determination of this cause, with the possession of the plaintiff of said railroad; requiring the defendant railroad company to fulfill said contract on its part; and declaring the said bonds secured by the mortgage aforesaid as a fund for the payment of the construction of said railroad, and requiring the defendant to issue and deliver the said bonds, and the defendant trust company to certify the same as required by the terms and provisions of said mortgage. That an injunction issue, pending the hearing and determination of this cause, restraining and enjoining the defendant the Richmond, Petersburg & Carolina Railroad Company and the Mercantile Trust Company from canceling, satisfying, or in any manner interfering with the said bonds and deed of trust aforesaid; and that the defendant Smith be enjoined from conveying or assigning any of said rights of way or terminals now in his name or under his control, or for which he has contracts, and that the plaintiff may be declared to have a lien thereon; and that the plaintiff herein may have such other and further relief in the premises as to the court may seem just and equitable, including a receiver to hold, manage, and operate the property of this defendant railroad pending the final determination of this cause." Analyzing this bill of complaint, and stripping it of the verbiage of the pleader, it charges the making of a contract between the plaintiff and the defendant railroad company. The subject of the contract was the construction of a railroad between two points not fixed, in which construction were included the roadbed, sidings, stations, terminal stations, bridges, culverts, and equipment, with no specifications or details enabling one to ascertain what the contract was; and when the work was completed it was to be paid for in bonds, or cash representing the proceeds thereof, not less than $1,800,000. Then follows an averment of breach of this contract, and a prayer which is, in effect, for the specific performance of the contract. The bill does not state whether the contract was verbal or in writing, or whether it has been reduced to form. The bill was filed January 26, 1899. The railroad company, on March 4th of the same year, entered a general demurrer thereto, and on the same day filed an answer, denying in detail each allegation of the bill. On the same day—March 4th—the circuit court hearing the bill and accompanying affidavits, and upon the demurrer and answer of the railroad company, an order was entered setting the cause for a hearing on March 14th thereafter, and in the meantime issuing the ordinary

restraining order. On March 18, 1899, the complainant filed an amended bill, reiterating all the averments of the original bill, reciting the order of March 4th, and the pleading of the defendant company, and averring the insolvency of the defendant railroad company, praying the relief asked for in the original bill. De Witt Smith demurred to the original and amended bill on March 18th. On March 22d, the railroad company filed a general demurrer to the amended bill. It, on the same day, filed an answer insisting that, on the plaintiff's own showing, the court had no jurisdiction of this cause, relying upon its answer to the original bill, and denying in toto the allegation of its insolvency. On March 22d, upon hearing, the circuit court dismissed the bill, so refusing the injunction. To the decree the plaintiff excepted and the cause is here upon the following assignments of error: "First. The court erred in dismissing the bill filed by the complainant in this cause, and dissolving the temporary injunction which had been granted thereon. The bill does not ask for the specific performance of a contract, but, on the contrary, shows the complainant to have been, at the time of filing the same, in possession of the road of said defendant company, and in a position to perform his contract. The aid of the court, by injunction, is asked only to prevent the interference of the defendants in his said possession, and to preserve in statu quo the funds out of which he was to be paid. Second. The court erred in deciding that the contract for the construction of said railroad set out in the bill of complaint was either vague, obscure, or uncertain. Third. The court erred in deciding that the allegation of insolvency, fully set out in the bill of complaint and supported by affidavits, by reason of which the remedy at law would have been totally inadequate, was not sufficient ground for the intervention of a court of equity. Fourth. The court erred for other reasons and matters appearing upon the face of the said decree and the opinion made a part thereof." Of these the fourth is so general that it cannot be considered.

D. Lawrence Groner and John Larkin, for appellant.

W. W. Henry (W. R. McKenney and Henry & Williams, on the brief), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

SIMONTON, Circuit Judge (after stating the facts as above). Before entering upon the merits of this appeal, it may not be unprofitable to comment upon what seems a want of due form in the pleading in this case. To the original bill the defendant railroad company filed a general demurrer, and on the same day, at the same time, filed an answer. The demurrer admitted all the facts well pleaded in the bill. The answer denied in toto and in detail every allegation of fact in the bill. This cannot be said to be in due form. Mr. Justice Story in his Equity Pleading (section 454), says:

"The want of due form constitutes a just objection to the proceedings in every court of justice, for to reject all form would be destructive of the law as a science, and would introduce great uncertainty and perplexity in the administration of justice. Every irregularity of this sort is fraught with inconvenience, and generally tends to delays and doubts. And it has been well remarked that infinite mischief has been produced by the facility of courts of justice in overlooking errors of form. It encourages carelessness and places ignorance too much on a footing with knowledge amongst those who practice the drawing of pleadings."

To the amended bill there is also a general demurrer, and at the same time an answer. Besides the general denial in the answer, there is a saving of the objection also taken by demurrer. This reservation in the answer is proper. Fost. Fed. Prac. § 110. But it

removes the necessity for, and may supersede, the demurrer. A defendant may demur, plead, and answer to the same bill (Eq. Rule 32), but in such case he must demur to a part of a bill, plead to another, and answer another. Each of these modes of defense must relate to a separate and distinct part of the bill. Story, Eq. Pl. § 437. If there is a demurrer to a part of a bill or to the whole, and an answer to the same part of the bill or to the whole, the demurrer is overruled. Beach, Mod. Eq. Prac. § 241. It is true that equity rule No. 37 provides that no demurrer or plea shall be held bad and overruled upon argument because the answer may extend to some part of the same matter as may be covered by such demurrer or plea. But this will not protect a demurrer which goes to the whole bill, and is accompanied by an answer covering all the allegations of the bill. Crescent City Live Stock Landing & Slaughter-House Co. v. Butchers' Union Live Stock Landing & Slaughter-House Co. (C. C.) 12 Fed. 225. Judge Blatchford, in Adams v. Howard (C. C.) 9 Fed. 347, says that, when there is both a demurrer and an answer to the same bill, covering the same matter, the defendant can be put to his election which of the two modes of defense he will rely upon. If he select the demurrer, and it be decided against him, he would probably lose the right to answer over, permitted in rule 34. Whatever doubt may exist in some cases, there can be no doubt in this case that when the demurrer admits all the facts, and the answer denies categorically all the facts pleaded, the best rule is that laid down in Daniell, Ch. Prac. (Perkins' Ed.) p. 792, that the answer overrules the demurrer. Nor can this answer be treated as a motion to dismiss the bill for want of equity. Such a motion, common as it is in states which have adopted Code pleading, and perhaps in other states, has no place in proper equity practice. Betts v. Lewis, 19 How. 72, 15 L. Ed. 576; La Vega v. Lapsley, 1 Woods, 429, Fed. Cas. No. 8,123. We will treat this case as if made on bill and answer. The answer insists on the objection that on plaintiff's own showing this court has no jurisdiction of this case. The objection is well taken in an answer. Indeed, when this is brought to the attention of the court, it must itself suo motu examine and decide upon it. Act 1875 (18 Stat. 470); Williams v. Nottawa Tp., 104 U. S. 209, 26 L. Ed. 719; Turner v. Trust Co., 106 U. S. 555, 1 Sup. Ct. 519, 27 L. Ed. 273; Farmington v. Pillsbury, 114 U. S. 144, 5 Sup. Ct. 807, 29 L. Ed. 114. The bill sets out an unexecuted contract alleged to have been made with the defendant railroad company, and its breach by the defendant in refusing to allow the plaintiff to proceed in its execution. The contract was secured by no lien; nor is there any trust involved. It is, therefore, a cause of action for unascertained damages to be sued at common law. The whole case depends on the existence, validity, effect, and breach of the contract. Until these are established, there can be no recovery. The seventh amendment of the constitution of the United States preserves the right of trial by jury in suits at common law when the value in controversy exceeds $20. And in Scott v. Neely, 140 U. S. 112, 11 Sup. Ct. 715, 35 L. Ed. 361, this has been held to prohibit federal courts from entertaining any such controversy in equity. The proper remedy is the ascertainment of the existence,

validity, and breach of the contract, and the amount of plaintiff's damages, in a suit at law; and when this is done, and the claim established, resort might be had to the court of equity. "In all cases," says the court, "when a court of equity interferes to aid a remedy at law, there must be an acknowledged debt accompanied by a right to the appropriation of the property of the debtor for its payment; or, to speak with greater accuracy, there must be, in addition to such established or acknowledged debt, an interest in the property, as a lien thereon created by a contract or by some distinct legal proceeding."

It is contended with great force that these bonds were specifically set apart under the contract for the payment of the work to be done by the plaintiff, and that hence the plaintiff has an equitable lien thereon. For this is quoted Walker v. Brown, 165 U. S., at page 664, 17 Sup. Ct. 453, 41 L. Ed. 865. In that case one Brown had delivered to a member of the firm of Lloyd & Co. $15,000, in bonds, to be used as security by them in purchases. They did incur a debt with Walker & Co. Brown, by letter to Walker & Co., stated to them that any indebtedness by Lloyd & Co. to them should be paid before the return to him of the bonds, or the value thereof. Here was a distinct appropriation of specified bonds for a specific purpose, accompanied by the delivery of the bonds thereupon. The supreme court held that there was a lien. But in the case at bar there is no such delivery or appropriation. On the contrary, the allegation is that upon completion of the work it is to be paid for in bonds, or in cash representing the proceeds of the bonds, not exceeding $1,800,000; the issue of bonds was $2,300,000; the bonds in the meantime remaining in the possession of and under the control of the railroad company, and it having the option to pay in cash. Nor will the alleged insolvency of the defendant company aid the bill. In Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, the bill alleged a simple contract debt, the insolvency of the company, and that all the company's property was in the hands of a trustee under a deed charged to be fraudulent. The court says:

"The plaintiffs were simple contract creditors of the company. Their claim had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into equity to obtain the seizure of the property of the debtor, and its application to the satisfaction of their claims, and this notwithstanding a statute of the state may authorize such a proceeding in a court of the state. The line of demarkation between equitable and legal remedies in the federal courts cannot be obliterated. See, to the same effect, Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577; Taylor v. Bowker, 111 U. S. 115, 4 Sup. Ct. 397, 28 L. Ed. 368. In Tube-Works Co. v. Ballou, 146 U. S. 517, 13 Sup. Ct. 165, 36 L. Ed. 1070, the bill alleged a debt and that the corporation had no assets or funds to pay the plaintiff, and asked the court for process against a delinquent stockholder. The court says: 'The bill does not allege any judgment in New York, or any effort to obtain one; nor does it aver that it is impossible to obtain one. It merely alleges that the corporation has no funds or assets wherewith to pay the claim of plaintiff. When it is sought by equitable process to reach equitable interests of a debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction in which the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegation showing that it is impossible to obtain such a judgment in any court within such jurisdiction.'"

Apart from this, the bill alleges a contract between the complainant and the defendant company to construct, furnish, and build a complete roadbed between some point in Virginia and another in North Carolina, together with necessary depots, etc.; the work to be paid for in certain bonds or in cash representing the proceeds of said bonds. It sets out certain terms in said contract, and alleges the breach of the contract. The bill prays, among other things, that the railroad company be required to fulfill its contract. Now, the contract on the part of the plaintiff was to construct, furnish, and build a complete roadbed. That on the part of the defendant was to pay for such completed roadbed in bonds, or cash, the proceeds of bonds. The plaintiff was not entitled to anything unless the roadbed was completed. He charges that he could not perform his contract unless the defendant fulfilled its contract in affording him the facility of doing so. The bill in purpose and substance is for the specific performance of a contract to build the road. If the court could undertake to order the defendant on its part to fulfill all the parts of its contract, it must order the plaintiff on his part to fulfill his contract; that is, to build the road. A contract to be specifically performed must be mutual. Fry, Spec. Perf. § 266. So the bill called upon the court to compel one party to build the railroad, and the other party to pay for it. This the court cannot do. A contract to build a railroad will not be enforced in equity. Railway Co. v. Marshall, 136 U. S. 407, 10 Sup. Ct. 846, 34 L. Ed. 385; Ross v. Railway Co., 4 Woolw. 26, Fed. Cas. No. 12,080. This case is strikingly like the case at bar. The decision is by Mr. Justice Miller. It is a collation and discussion of many cases on the subject. In many particulars it meets the argument of appellant in this case, and distinctly decides that a contract to build a railroad cannot be enforced in equity. An executory contract will not be specifically enforced unless the remedy is mutual, and the performance of a comparatively inconsiderable part of a contract does not take it out of the class of executory contracts. Unless the court can decree specific performance of the whole of a contract, it will not interfere to enforce any part of it.

The counsel for the appellant, admitting that the court cannot decree specific performance of a contract to build a railroad, seeks, however, an injunction against the railroad company from any use of its bonds. That is to say, he asks the court to tie the hands of the railroad company and to impound all of its bonds, because he insists that they are applicable to a provision of a contract on his part, not yet performed, which he may not perform, and which this court cannot compel him to perform. He thus seeks to use the process of the court to compel by indirection the specific performance of the contract, which he could not ask the court to do directly. The language of the court of appeals of Maryland in Canton Co. v. Northern Cent. Ry Co., 21 Md. 399, is not inapplicable to this case:

"As the bill stands, we are clearly of the opinion that it does not show such a contract as a court of equity can enforce by decree, and, failing in that, it follows that an injunction which was intended to aid the general relief sought by the bill was improperly granted."

The bill cautiously refrains from stating whether the contract was verbal or written, and the parts of the same set forth are vague to a degree. The court below was impressed with this. The uncertainty of the termini of the road between Ridgeway, a point on the Raleigh & Gaston Railroad and Hermitage road, Virginia, on the line of the Richmond, Fredericksburg & Potomac Railroad, a distance of about 103 miles; the uncertainty of the route through Richmond, Petersburg, and Manchester; the indefinite statement as to the depots and station houses; the character of the bridges; the time within which the work is to be completed; a total absence of any particulars as to the character of the work, the inspection of its progress, time and mode of payment,—all these are left in a condition of vagueness and uncertainty. Were the court to undertake its supervision, all its resources and time would be exhausted thereby. In our opinion, the bill on its face fails to state a case for the intervention of a court of equity. The conclusion reached by the court below is approved, but it should have dismissed the bill without prejudice. The cause is remanded to the circuit court with instructions to modify its decree in this respect, and to enter a decree dismissing the bill without prejudice.