### BERLINER GRAMOPHONE CO. v. SEAMAN.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1901.)

No. 403.

1. APPEAL—DISMISSAL OF BILL ON APPEAL FROM INTERLOCUTORY ORDER.

On an appeal from an interlocutory order granting or continuing an injunction, the court may determine the suit on its merits, and dismiss the bill, where the case stated is one which a court of equity will not entertain.

**2.** SPECIFIC PERFORMANCE—CONTRACT ENFORCEABLE—CONTINUOUS CONTRACT.
A court of equity will decree specific performance of a contract only
when it can dispose of the matter by an order capable of being enforced
at once. Where the contract is one establishing business relations be-
tween the parties, containing mutual covenants to be performed by each,
and having several years to run, the court will not undertake to super-
vise its performance by enjoining its violation by one party at the
instance of the other.

Appeal from the Circuit Court of the United States for the West-
ern District of Virginia.

Marshall McCormick and Wm. Gordon Robertson (Albert B.
Weimer and Frederick M. Leonard, on the brief), for appellant.

Waldo G. Morse and John T. Harris, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and WAD-
DILL, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from
an interlocutory decree of the circuit court of the United States for
the Western district of Virginia, continuing an injunction theretofore
granted. 108 Fed. 714. The bill was filed by Frank Seaman against
the Berliner Gramophone Company, and seeks practically specific
performance of a contract made by it with him, and damages for a
breach thereof, with prayer for injunction against any further
breaches of the contract.

The Berliner Gramophone Company, a corporation of the state of
Virginia, by reason of certain contracts made with persons inter-
ested therein, had secured the exclusive right to manufacture, vend,
and use in the United States, under the patents and rights of Emil
Berliner, a certain invention, device, or machine known and de-
scribed in the patents and in commerce as the gramophone. On
October 10, 1896, the Berliner Gramophone Company, being thus
in control of these patents, invention, or machine, entered into a
contract in writing with Frank Seaman, the main features of which,
or at least the features with which this discussion is most concerned,
are these: The Berliner Gramophone Company, in consideration
of money paid and covenants to be performed by Frank Seaman,
and subject thereto, grants to him the exclusive license to buy, sell,
and deal in, throughout the United States, except the District of
Columbia, gramophones and gramophone goods, embodying said in-
ventions, and all improvements therein that may come into the con-
trol of said gramophone company, except recording apparatus, for a
period of 15 years from the said date of the agreement; these gramo-
phones and gramophone goods, and parts for the repair of them,
to be furnished by the said gramophone company to the said Sea-
man upon his orders, at stipulated prices. The said gramophone
company binds itself by covenant, so long as Seaman punctually per-
forms his covenants, not to sell or deliver to any other person or cor-
poration the gramophone or gramophone goods aforesaid in the
territory aforesaid, except to the officers, directors, and stockholders
of said gramophone company, and in that case only in reasonable
quantity, for their own use, or to be given away, but not to be sold

for profit. Besides this, the said gramophone company also covenants that so long as Seaman punctually performs his covenants, it will fill with reasonable promptness and dispatch all orders of Seaman for gramophones and gramophone goods, and agrees that, if it shall make default, Seaman may, after notification in writing to the gramophone company of his intention so to do, supply the gramophones, gramophone goods, and parts for the repair thereof necessary to fill the orders defaulted on, provided that said gramophones, gramophone goods, and parts for repair shall be equal in quality to those supplied by the company, and at a certain price. The agreement authorizes Seaman to cause one or more corporations to be created, with such powers and capital as said gramophone company may approve, and after such approval Seaman can assign to such corporations all the rights granted him in this agreement, provided that such corporations undertake the performance of covenants of Seaman, who will then be relieved from further obligations thereunder. On his part Seaman covenants to pay for the gramophone and gramophone goods furnished, to use his best efforts to promote the gramophone business in the United States, to advertise gramophones and gramophone goods prominently and freely as Berliner gramophones and Berliner gramophone goods, and not to manufacture, buy, sell, or use gramophones or gramophone goods, or any parts thereof, or other talking machines or parts thereof, except such as he buys from the Berliner Gramophone Company. Both parties agree that their books shall at all times be exhibited to the other of them, in order to determine any question in dispute under the agreement. Provision is also made for the appointment of a disinterested arbitration to settle any dispute regarding the interpretation of the contract, and the right is reserved to the gramophone company to rescind the contract after notice, in case Seaman commits any breach of his covenants, and does not remove the cause of complaint. Gramophone goods are matrices or dies from which the disks are obtained, known and designated in the contract as "records." The agreement thus defines the term:

"The phrase 'gramophones and gramophone goods,' as used in this agreement, shall be held to include not only the machines and mechanical devices constituting the inventions hereinbefore mentioned, and all the improvements in the said inventions that may come into the licensor's control (except recording apparatus), but also all motors (except electric batteries) that may be adopted for driving the said machines and mechanical devices, as well as all other mechanism, appliances, and accessories that may be adopted as necessary or useful in handling, operating, or using the machines or mechanical devices which constitute the said inventions or improvements; for it is the intention hereof to refer by the phrase aforesaid to the complete sound-producing machine, which may embody the said inventions and improvements and all parts of the said machine, notwithstanding the fact that other inventions may also be embodied therewith in the said machine."

This agreement having been made, the parties acted under it, Seaman using a corporation called the National Gramophone Corporation as his agent for selling the gramophones and gramophone goods. The business was large and profitable. Differences having arisen, Seaman filed this bill. He charges a breach of the contract on the part of the gramophone company, in that during the year

1899 it failed and refused to supply and deliver to him gramophones, records, and gramophone goods with reasonable dispatch, whereby he was unable to fill the orders he then had and subsequently received, and the amount of his sales was greatly lessened. That in May, 1900, he ordered a large number of records from the gramophone company, and that the company wholly failed and refused to deliver the same, and still refuses, and that the gramophone company has refused to fill his orders for large numbers of the machines and records, said orders having been given under said contract, and that the gramophone company has refused to submit their differences to arbitration. The bill prays damages for these breaches of the contract, and an injunction against further violation of it. The bill having been filed, an injunction was granted dated June 22, 1900, restraining the gramophone company from selling, delivering, or otherwise disposing of, and likewise from permitting or allowing any such selling, delivery, or disposing of, within the United States of America, any of the gramophones, records, matrices, or goods referred to in the contract of November 10, 1896. On August 6, 1900, the Berliner Gramophone Company filed its answer, admitting its refusal to fill orders of Seaman, partly because those orders were for gramophone goods and not gramophones, and chiefly and especially because he had violated the covenants on his part, and had betrayed, and was assiduous in betraying, the interests of the Berliner Gramophone Company to competing and infringing corporations. The case was heard on bill and answer as affidavits, and a very large number of affidavits on both sides, which swell the record to an unusual extent. At this hearing the circuit court continued the injunction theretofore ordered, and a bond for $5,000 was required from the complainant. Leave to appeal was granted, and the case is here on assignments of error.

The present appeal is from an interlocutory order continuing an injunction. It is now well settled by the supreme court, after citation and review of all the cases upon the subject, that the court, in passing upon an appeal of this character, may consider and decide the case on the merits, and may thereupon render or direct a final decree dismissing the bill. Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810. The gravamen of this bill is a breach of a contract, and the loss of money therefrom. The first question, therefore, is, has the complainant a plain, adequate, and complete remedy at law. That compensation may be had in damages for the breach already charged is shown by the prayer of the bill seeking such compensation. So the nature, character, and amount of such damages can be ascertained. Even were it the case that there is not "any rule by which these damages can be estimated with precision, this is not a conclusive objection against the resort to a court of law." "It is very well known that in all judicial proceedings for injuries inflicted by one party on another, whether arising out of tort or out of contract, the relief given by way of damages is never the exact sum which compensates for the injury done; but, with all the rules which have been adopted for the measurement of damages, the relief is only approximately perfect." Miller,

110 F.—3

J., in Texas & P. R. Co. v. City of Marshall, 136 U. S. 405, 10 Sup. Ct. 849, 34 L. Ed. 390.

There is another question in the case. The duration of this contract in question, if it be not rescinded under one of its terms, is 15 years from October 10, 1896. The obligation of its covenants is interdependent,—that is to say, each party is bound for his covenants, if the other party performs its. The complainant now charges a breach of covenant on the part of the gramophone company, prays compensation for that, and an injunction against any future breach. It is a continuous contract. The act to be done by the defendant is not a single act, but a series of acts, to be performed at many times. In Chicago & A. Ry. Co. v. New York, L. E. & W. R. Co. (C. C.) 27 Fed. 521, the court says:

"In many cases where the act to be done by the delinquent party was not a single act, to compel which a single decree of the court would be sufficient, but a series of acts, which would call for the frequent interposition of the court during a protracted period of time, by successive decrees or orders, the inconvenience of the remedy of specific performance has been deemed so great that the courts have refused to interfere, and have left the party aggrieved to his remedy at law."

Were the court to assume supervision of this continuous contract now, and enforce its performance by its injunction, it must continue this supervision, and see to it during the whole existence of the contract that both parties fulfill their mutual obligations. This has been repeatedly declared to be outside of the functions of a court of equity. Strang v. Railroad Co., 41 C. C. A. 474, 101 Fed. 511; Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Texas & P. Ry. Co. v. City of Marshall, supra; Ross v. Railway Co., Fed. Cas. No. 12,080. In this last-named case Mr. Justice Miller says:

"If the act to be done by the delinquent party, whether plaintiff or defendant here, were a single act, to compel which a single decree of the court would be sufficient, a case would be presented very unlike that before us. Years must elapse before this work can be done and paid for. At every step of its progress, the interposition of the court, either by orders in this case or by decrees in successive cases, may be invoked, if we are at this time to lend the aid of chancery to either of the parties. It is not difficult to foresee the mischief of such a course. The rule is settled, even in the English chancery, where the jurisdiction is greatly extended in all such cases, that it will decree specific performance only when it can dispose of the matter by an order capable of being enforced at once; that it will not decree a party to perform a continuous duty, extending over a number of years, but will leave the opposite party to his remedy at law."

Considering the whole case, we are of the opinion that there was error in the judgment of the court below. Let the case be remanded to the circuit court, with instructions to dismiss the bill for want of jurisdiction, without prejudice.