LIFE PRESERVER SUIT CO., Inc., v. NATIONAL LIFE PRESERVER CO. et al.

(Circuit Court of Appeals, Second Circuit. May 10, 1918.)

No. 248.

1. PATENTS ☞215—OPTION TO BECOME EXCLUSIVE LICENSEE—TIME AS ESSENCE.

Provision of contract giving one privilege of becoming, at a certain time, exclusive licensee to manufacture under a patent, provided he give ten days' notice of intention, and within such period furnish a bond, gives but a mere option, as to the exercise of which time is of the essence.

2. SPECIFIC PERFORMANCE ☞75—CONTRACT ENFORCEABLE—CHANGING CONDITIONS.

Where contract provides for giving by defendant of exclusive license to manufacture under a patent, and for plaintiff giving from time to time. as royalties increase, additional security, specific performance by defendant of the agreement should not be decreed, whereby the court assumes protracted supervision of its performance, but only the giving of the license should be ordered.

Learned Hand, District Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Life Preserver Suit Company, Incorporated, against the National Life Preserver Company and others. Decree for complainant, and defendants appeal. Reversed and remanded, with directions to dismiss bill.

The plaintiff is the assignee of whatever rights here important were possessed by one Keviczky, and we shall hereafter speak as if he, and not his creature corporation, had brought the suit. Defendant (hereinafter called the National) owned the patent of one Youngren for a form of life preserver designed for use at sea. It is a complete covering for the body, intended not only to keep its wearer from sinking, but to maintain the warmth of the body

even in very cold water. This device the National wished to exploit. Its president lived in the state of Wyoming; the directors in New York. To them Keviczky became known as a man having acquaintance with men concerned with maritime affairs, and with him the National made the written contract out of the alleged breach of which grew this action.

With the major portion of that document we are not concerned. By it Keviczky became the National's sole selling agent, agreeing to take a certain number of "suits" monthly and to pay therefor cost plus $10 per suit. So far as we perceive from this record, the present action has per se no effect on or relation to this selling arrangement. But it was further agreed that six months after the contract date Keviczky should have "the right and privilege of taking over the manufacture of said suits as the exclusive licensee" of the National, he as such licensee to pay a royalty of $5 per suit on a minimum of 5,000 suits per year, provided, however, that he should also furnish a "good and sufficient bond" in $10,000, to keep the National "fully secured against default in payment on the part of" Keviczky, and further, as soon as royalties rose above $15,000 in any one quarter, Keviczky should give an additional $10,000 bond, and so on for each additional increment of $15,000 royalties in a single quarter. Then follows the final proviso: Keviczky "must give ten days' notice in writing to the [National] of his intention to take over the exclusive license hereinbefore provided, and within the ten-day period must deliver to the [National] the bond aforementioned and described."

On May 5, 1917, Keviczky gave written notice that he elected to become sole licensee under the Youngren patent, and to manufacture as such licensee. On May 10th he wrote the National, stating that he was encountering "red tape" in getting a bond, and asking an extension of "thirty days from date" wherein to get it. His originally agreed time was up on the 15th and on that day he was advised in writing that the board of directors of the National had on the 14th refused "to change the terms of the contract."

Hanson (the president) was then at home in Wyoming, and on the 16th the National, at Keviczky's insistence, sent Hanson, "for consideration and signature," an agreement for extension of time, and then advised Keviczky that, if Hanson and another person interested and named wished it, another directors' meeting would be held to "reconsider the decision" refusing extension. As soon as Hanson learned that the directors in New York had once voted to deny Keviczky's request, he declined to express any opinion or do anything until "I fully understand the situation." He then came to New York, and never either signed or approved Keviczky's proposed extension; nor did the National take any corporate action until June 16th, when notice was served on Keviczky that his right or privilege of becoming sole licensee was terminated or canceled for failure to furnish bond.

No bond was ever at any time tendered or executed. The National having made or intending to make some other business arrangements inconsistent with Keviczky's being sole licensee, this action was begun, demanding that the National specifically perform and make Keviczky its sole licensee, and the lower court so decreed, providing, however, that the bond should first be given by the successful plaintiff. The material ordering part of the decree is that "the said agreement be specifically performed by said defendant." This appeal was taken by the National, the operation of decree having been suspended until decision should here be had.

Francis W. Aymar, of New York City (W. Bourke Cockran, of New York City, of counsel), for appellants.

Edward E. McCall, of New York City, for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). Of the matters presented by this record, we shall consider only the nature of the contract, or that portion of it here in controversy, and admittedly

plainly expressed in and by the writing before us. That document may be studied, first, as to the rights thereby vested in Keviczky; and, second, as to the legal propriety of attempting to remedy a breach thereof by decreeing specific performance.

[1] 1. The oral evidence for plaintiff herein consists in an attempt to show that by divers persons, who were also officers of the National, he was deceived into the belief that indefinite extensions of time would be given for the bond due from him on May 15, and thereby lulled into fancied security, from which he was rudely awakened by notice of cancellation on June 16, which notice is presented to us by appellee as the exercise of a "right of forfeiture" by the National, for a breach admitted by Keviczky; but it is asserted (and was so found below) that all such right was waived by defendant, because its proven "acts and declarations" showed an "intent to suspend the exercise of that right," and Keviczky was "reasonably justified in relying" thereupon, and doing nothing regarding the giving of security down to June 16, when notice of cancellation was given.

This is an erroneous view of the contract; it gave Keviczky no estate or right in the patent (Richardson v. Hardwick, 106 U. S. 254, 1 Sup. Ct. 213, 27 L. Ed. 145); he had but an option or privilege to obtain such right or estate, and to the exercise of that option two things were plainly precedent—he had to give notice of election in writing, and within ten days thereafter give a $10,000 bond. Both of these requirements were of equal importance; added together they constituted acceptance of option or exercise of privilege; nothing else would do; there could be no fractional acceptance, and until there was an acceptance completed and perfected, Keviczky had nothing to forfeit.

The proper question is whether he ever complied with the two conditions precedent to his exercise of election or option; and this, perhaps, is but another way of asking whether in this contract time was of the essence. If it were a mere contract of sale, which in respect of lands is the ordinary subject of specific performance, time would not be regarded as essential in the absence of special and controlling language; but it "is different where the contract is a mere election to purchase upon certain conditions." Waterman v. Banks, 144 U. S. 402, 12 Sup. Ct. 648, 36 L. Ed. 479. And see as exactly this case in legal effect Lord Ranelagh v. Melton, 2 Drew & Sm., 278.

It is the general rule that time is of the essence in respect of exercise of options, for unless there is by complete acceptance exactly as agreed on, a contract created, there is nothing, for before acceptance there was but a proposition for a contract. Where, as here, the option is irrevocable by the offerer, there is most cogent reason for the essentiality of time; it would be intolerable to hold an irrevocable offer open indefinitely. Undoubtedly the offerer may extend the time; but in this case there is not the slightest evidence that such extension was given. There is not even proof that prior to May 15 there was any of the loose talk by which Keviczky is said to have been deceived; he simply neglected to produce a bond on or before May 15, therefore on that day his option expired. After that the parties might have made a new contract, but the contract here sued on was dead. We do not in-

timate that there is any proof of deception of or false promises to Keviczky by this corporate defendant; we do regard most of the evidence on this head as irrelevant. It follows that as matter of law plaintiff never duly exercised the option of becoming defendant's exclusive licensee, and, said option having expired, the facts present no cause of action at law or in equity.

[2] 2. If plaintiff had proven fulfillment of contract by himself and refusal to perform by defendant, the contract produced would nevertheless not justify the decree entered. Doubtless it would have been proper to order the execution and delivery of the single document known as a license to manufacture under a patent (Bijur, etc., Co. v. Eclipse, etc., Co., 243 Fed. 600, 156 C. C. A. 298); but much more was directed to be done.

In effect, the court undertook to see to it that an agreement contemplating change of conditions as time went on, calling for additional security from Keviczky as sales increased, and bristling with probabilities of dissension as to the effect on the rights of parties of transfers of title and business acts such as can never be foreseen, was performed according to its terms for a period equal to the unexpired years of Youngren's patent. No such protracted supervision of a business should be assumed. Rutland Marble Co. v. Ripley, 10 Wall. 358, 19 L. Ed. 955; Ross v. Union Pac. Ry., Wool. 26, Fed. Cas. No. 12,080; Berliner, etc., Co. v. Seaman, 110 Fed. 30, 49 C. C. A. 99.

Decree reversed, and cause remanded, with directions to dismiss the bill, with costs in both courts.

LEARNED HAND, District Judge, dissents as to the second ground of decision.