[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision on a request by Plaintiff Barbara Haydon ("Haydon" or "Plaintiff") to strike a notice of lis pendens filed against her land by first Defendant Leon Stamas ("Defendant" or "Stamas") and second Defendant Leon Stamas, the son of the elder Leon Stamas.[1] The Defendant has counterclaimed for specific performance and breach of contract. The parties have agreed to the relevant facts and submitted the relevant issues to the Court for judgment. Jurisdiction is pursuant to G.L. (1956) §§ 8-2-13, 8-2-14.
 Facts and Travel
The Plaintiff is the owner of undeveloped real property located on Crestwood Road otherwise identified as Assessor's Plat 235, Lot 242 in the City of Warwick, Rhode Island ("Property"). In December 2003, the Defendant expressed interest in purchasing the Property.
On February 9, 2004, the Plaintiff and the Defendant entered into an agreement which afforded the Defendant an option to purchase the Property.[2] The rather pithy written agreement[3] described the Property with sufficient specificity and acknowledged the Plaintiff as the owner. It confirmed that Stamas paid Haydon $2,000 as consideration to "hold the property off the sale market" and established a proposed purchase price of $179,000. According to the terms of the option agreement, the Defendant had to produce a Purchase and Sales Agreement signed and executed by both parties by February 23, 2004, to exercise his option to acquire the Property. If the parties had not executed a valid Purchase and Sales Agreement by February 23, 2004, Haydon would return the deposit to Stamas and place the Property back on the market.
Upon acquiring the Property, the Defendant planned to construct a house on the undeveloped lot. As such, the Defendant wanted to determine whether the lot was, in fact, buildable. Specifically, the Defendant wanted to assess the likelihood of obtaining a permit from the Rhode Island Department of Environmental Management to install an Individual Sewage Disposal System ("ISDS") on the Property. The Defendant hired ISDS Engineer, John Caito, and requested the Plaintiff's permission to allow Caito on the Property to evaluate the landscape. The Plaintiff not only consented to the Defendant's request, but she also suggested that the Defendant insert a provision in the anticipated Purchase and Sales Agreement that required an examination of the Property by an ISDS engineer. Despite the proclaimed importance of receiving an ISDS permit, the Defendant's engineer never visited the Property.[4]
With the expiration of the option looming, between February 9, 2004 and February 23, 2004, both the Defendant and his attorney, Kathleen DiMuro, spent a considerable amount of time in Florida. Their respective trips interfered with the Defendant's ability to prepare a Purchase and Sales Agreement by the option deadline.
The Defendant informed the Plaintiff that his lawyer would be out of town until Monday, February 23, but he assured her that Ms. DiMuro would prepare and forward the necessary paperwork. On February 23, Ms. DiMuro telephoned the Plaintiff and detailed a tentative timeline. On Monday, Ms. DiMuro would overnight the agreement to the Defendant in Florida. On Tuesday, the Defendant would sign and return the agreement also via overnight mail. On Wednesday, Ms. DiMuro would forward the agreement to her attorney. The Plaintiff replied "okay." (Plaintiff's Deposition at p. 28, l. 8). The Plaintiff informed Ms. DiMuro that her attorney, John Comery, would review the proposed Purchase and Sales Agreement and prepare the deed.
On February 23, 2004, Ms. DiMuro faxed a copy of the proposed Purchase and Sales Agreement to Mr. Comery. Mr. Comery took issue with a typographical error that provided Seller would pay the costs associated with obtaining the ISDS permit. Ms. DiMuro made a handwritten correction to this error on the copy signed by Stamas.
Despite Ms. DiMuro's assurances, by Thursday afternoon, February 26, 2004, neither the Plaintiff nor her attorney had received the signed Purchase and Sales Agreement.[5] On Thursday afternoon, the Plaintiff's real estate agent informed her of another prospective buyer who had offered to pay $200,000 for the Property. Because the Plaintiff had not received the promised Purchase and Sales Agreement nor been apprised of its progress, she accepted the subsequent offer. On the morning of February 27, 2004, the Plaintiff executed a Purchase and Sales Agreement with the later buyer. Fifteen minutes prior to the executing the agreement, the Plaintiff informed Ms. DiMuro that she had accepted another offer and would return the deposit to Stamas. When Ms. DiMuro contacted Mr. Comery, he was initially unaware of the development; however, he later confirmed that the Plaintiff had entered into a Purchase and Sales Agreement with another buyer.
Shortly thereafter, the Defendant filed a copy of the option to purchase agreement in the Land Records Office for the City of Warwick.
The Plaintiff filed the underlying complaint seeking injunctive relief in the form of a preliminary and permanent injunction and a temporary restraining order to prevent the Defendant from interfering in the sale of the Property to a third party. On April 26, 2004, Judge Pfeiffer entered an order denying the Plaintiff's request for a temporary restraining order. The Defendant has filed a counterclaim for specific performance of the option agreement and breach of contract. The Plaintiff now requests that this Court deny the Defendant's request for specific performance and strike the lis pendens thereby removing the cloud on the title.
 Specific Performance
"The grant of a request for specific performance is not a matter of right but rests within the sound discretion of the trial justice."Thompson, 762 A.2d at 436 (quoting Eastern Motor Inns, Inc. v. Ricci,565 A.2d 1265, 1269 (R.I. 1989). "It is well established that the party who wishes to avail himself of the unique remedy of specific performance must show that he was ready, able and willing to perform his part of the contract." Griffin v. Zapata, 570 A.2d 659, 662 (R.I. 1990) (quotingJakober v. E.M. Loew's Capitol Theatre, Inc., 107 R.I. 104, 114,265 A.2d 429, 435 (1970)). The existence of a valid underlying contract is a prerequisite to prevailing on a claim for specific performance. Gillv. Wagner, 813 A.2d 959, 964 (R.I. 2002).
In this action for specific performance, the primary issue before the Court is whether a purported oral extension to the expiration of a written option to purchase real estate agreement is valid. In order to reach this issue, the Court must first resolve two subsidiary matters. First, the Court must clarify the nature of the underlying agreement. Second, given the nature of the agreement, the Court must address whether time was of the essence.
 The Nature of the Underlying Agreement
Before addressing the validity of an oral modification to a written agreement, it is necessary to clarify the nature of the underlying agreement. The Plaintiff strenuously argues that the written agreement does not constitute a Purchase and Sales Agreement. The Defendant does not dispute this characterization. Although the Defendant uniformly references the writing as an option agreement, his analysis of the relevant issues, nonetheless, often equates the option agreement with a Purchase and Sales Agreement. Such an equation ignores the critical distinction between the two types of contracts. "Under a purchase and sales agreement, the purchaser becomes the equitable owner of the real estate and the seller holds legal title as a security interest." Thompsonv. McCann, 762 A.2d 432, 439 (R.I. 2000). A buyer who has executed a Purchase and Sales Agreement possesses a bona fide interest in a property that an option holder blatantly lacks. After a review of the substance of the underlying agreement and analysis of the relevant case law, the Court concludes that the agreement is an option contract only, not a valid Purchase and Sales Agreement.
Contracts for the sale of land must be in writing in order to be enforceable. § 9-1-4 (1). The Supreme Court has determined that a written agreement for the sale of real estate must contain five essential terms to bring it outside the statute of frauds: (1) it must establish the identities of the buyer and the seller; (2) it must manifest their respective intentions to sell and/or to purchase; (3) it must include a description of the subject property that applies exclusively to a particular piece of land; (4) it must set forth the purchase price; and (5) it must detail the terms of payment if the sale is not for cash. SeeCaito v. Juarez, 795 A.2d 533, 536 (R.I. 2002).
In the case at bar, the option agreement does not contain the essential terms of a valid Purchase and Sales Agreement. Although it clearly states the identity of the parties, their respective intentions to sell and to purchase, a relatively precise description of the subject property and the purchase price, the terms of payment are noticeably absent. Furthermore, the Defendant's option to purchase the Property hinges on the execution of a valid Purchase and Sales Agreement. Such a contingency strongly suggests that the parties did not intend the option agreement to act as a valid Purchase and Sales Agreement.
The intent of the parties is the critical distinction between a sale of property subject to conditions and an option agreement to purchase property. If the parties intend that the prospective buyer be obligated to purchase the Property, the agreement creates a sale property. If the prospective buyer merely has the choice to purchase the property, the agreement creates an option. See E. Holmes, Corbin on Contracts § 11.18, at 621 (rev. ed., J. Perillo, ed. 1996).
The terms of the agreement clearly state that the Defendant paid consideration for the Plaintiff to hold the property off the sale market. The agreement does not bind the Plaintiff to sell the Property in the absence of a validly executed Purchase and Sales Agreement. For the same reason, the agreement does not bind the Defendant to purchase the Property. It merely gives the Defendant the exclusive option to purchase the Property until February 23, 2004.
The circumstances of the instant case differ markedly from Vigneaux v.Carriere, 845 A.2d 304 (R.I. 2004). In Vigneaux, the Court upheld the trial justice's decision to grant specific performance of an agreement for the sale of land. First, the defendant argued that the contract lacked mutuality of obligation, because it simply was an agreement to see if the parties could develop a satisfactorily purchase and sales agreement. The Court rejected the defendant's argument because the record lacked any evidence to support the defendant's contention. Despite the addition of specific terms and conditions of the sale by both buyer and seller, the disputed contract made no reference to the execution of a subsequent, more precise purchase and sales agreement. Second, the defendant argued that the written agreement did not constitute a purchase and sales agreement because it lacked a provision detailing the terms of payment. Although the Court noted the absence of the terms of payment, it was satisfied that the placing of a for sale sign, the signing of the document after addition of terms and conditions of the sale, acceptance of a deposit, application for a mortgage, an inspection of the property, and the execution of a Real Estate Disclosure Form supported the interpretation of the contract as a valid purchase and sales agreement.
The agreement in Vigneaux contained numerous handwritten additions which included a detailed allocation of closing costs and delineated the method by which said costs were to be paid. In the absence of a definitive provision to the contrary, such conditions belied the Defendant's argument that the parties envisioned the execution of a separate purchase and sales agreement. In sharp contrast, the option agreement herein lacks any detailed provisions similar to those found in Vigneaux that would allow the Court to overlook the requirement that terms of payment, if not for cash, must be detailed. Moreover, the disputed writing expressly conditions the Defendant's option to purchase the Property on the execution of a subsequent purchase and sales agreement.
 Time is of the Essence
Despite the weight of authority to the contrary, the Defendant contends that the option agreement does not contain a "time is of the essence" provision. The Defendant's assertion ignores the very nature of an option contract.
"As a general rule, time is of the essence in an option contract."Alling v. C.D. Cairns Irrevocable Trusts Pshp., 927 F. Supp. 758, 764
(D. Vt. 1996) (citing Life Preserver Suit Co. v. National Life PreserverCo., 252 F. 139, 141 (2d Cir.), cert. denied, 248 U.S. 571 (1918));Linan-Faye Construction Co. v. Housing Authority, 995 F.Supp. 520, 524
(D.N.J. 1998) ("it is presumed that "time is of the essence" in option contracts"). Finkle v. Gulf Western Mfg. Co., 744 F.2d 1015, 1020 (3d Cir. 1984) ("Time is always of the essence in an option contract."); Hurdv. Cormier, 358 Mass. 736, 738, 267 N.E.2d 116, 118 (1971) ("It is established as a general rule that whether the question arises at law or in equity, time is of the essence of an option.").
"When an option contract specifies the time for notice of acceptance, it is almost universally held, in both law and equity, that the stated time is to be regarded as of the essence, whether expressly so stated or not." E. Holmes, Corbin on Contracts § 11.17, at 601 (rev. ed., J. Perillo, ed. 1996). "The primary reason for holding that time is of the essence of an option contract is that the parties have expressly made it so." Id. at 605.
In an option contract, the option giver makes a promise in exchange for a payment or other executed performance not in exchange for a return promise. See id. As the agreement clearly memorializes, the Plaintiff made a promise "to hold the Property off the market" in exchange for the Defendant's payment of $2,000. Also, the option agreement twice references the February 23, 2004 expiration date. According to the terms of the agreement, the Plaintiff reserved the right to return the deposit and place the Property back on the sale market in the absence of a Purchase and Sales Agreement executed by February 23, 2004. Given the facts, it would be against the weight of the evidence to maintain that time was not of the essence in this option agreement. Consequently, the Court rejects the Defendant's assertion that time was not of the essence.
 Oral Modification
Having established that the disputed writing is an option agreement to purchase the Property in which time was of the essence, the Court will consider the primary issue raised in this dispute — whether an oral extension of an option agreement to purchase real property is enforceable.
Although the Defendant argues that the Plaintiff agreed to extend the date for the execution of a Purchase and Sales Agreement, the record before the Court does not substantiate this argument. In the Plaintiff's deposition testimony, she stated that she said "okay" in response to Ms. DiMuro's tentative timeline for the production of the Purchase and Sales Agreement. Although she did agree to review a proposed Purchase and Sales Agreement, the Plaintiff never expressly stated that she would extend the deadline set forth in the option agreement. After the expiration of the option, the Defendant was not foreclosed from purchasing the Property. However, after February 23, 2004, the Plaintiff was no longer obligated to hold the Property off the market. Even assuming the Plaintiff's "okay" sufficiently manifested her intention to extend the option deadline, the Court holds that an oral extension of an option deadline in a written option to purchase real estate is not enforceable.[6]
The Defendant relies on Gill v. Wagner, 813 A.2d 959, 964-65 (R.I. 2002) and Berube v. Montgomery, 463 A.2d 158, 160-61 (R.I. 1983) to support the proposition that oral modification of the option agreement is legally enforceable. However, the Defendant's reliance on these cases is somewhat misguided.
In Berube, the Supreme Court specifically addressed the effect of the statute of frauds on an oral agreement to extend time for a conveyance of realty. The Court stated "the terms of the statute of frauds do not require a holding that an oral extension of time for the carrying out of a contract for the sale of real estate be ineffective." However, the Court qualified this holding by stating: "[i]t is undoubtedly true . . . that there are some portions of an agreement subject to the statute of frauds which may be so essential to the heart of the transaction as to be not susceptible to modification by parol." Berube, 463 A.2d at 160.
In that case, the parties had executed a valid purchase and sales agreement which stated that the sellers would perform water table and percolation tests on the property and produce the results prior to closing. Initially, the parties agreed in writing to extend the time for conveyance. Then, the parties orally agreed to a second extension. The sellers eventually repudiated. In ordering specific performance of the purchase and sales agreement, the Court affirmed the trial justice's finding that "time was not of the essence, any delay was caused by the sellers, and the oral agreement to extend the time of performance was not in derogation of the statute of frauds." Id. at 160-61. Based on these circumstances, the Court held that the time for performance was not so essential to the heart of the transaction so as not to be susceptible to parol.
The instant case is easily distinguishable. First, the agreement at issue is an option to purchase the Property, not a Purchase and Sales Agreement. Second, the Court has already determined that time was of the essence in the exercise of the option. Third, the Plaintiff, as the prospective seller, did not contribute in any way to the Defendant's failure to produce a valid Purchase and Sales Agreement before the expiration of the option. Finally, the agreement at issue falls within the qualified exception recognized by the Court, because the expiration of the option is so essential to the heart of the transaction as to be not susceptible to modification by parol.
In Gill v. Wagner, the parties had executed a valid purchase and sales agreement. Prior to the scheduled closing, a dispute arose as to whether the seller rightfully owned the property. The first closing date passed, and the parties orally agreed to defer the closing until which point the seller could clear the title. Eventually, the seller summarily denied that a defect in the title still existed. Understandably, the buyers refused to close until the seller could convey a clear title. Shortly thereafter, the seller returned the buyer's deposit and stated that he was terminating the contract. The buyers sought specific performance and argued that the seller breached the purchase and sales agreement by failing to take reasonable steps to resolve the title problem. The Court found that the purchase and sales agreement gave the buyers an interest in the title of the disputed property and that the buyers were at all times ready, willing, and able to perform. In addition, the Court recognized that it was the seller who sought to repudiate his obligations under the agreement. As such, the Court held that the oral extension of the closing date was valid, and granted the buyers' request for specific performance of the purchase and sales agreement.
Again, the case at bar is easily distinguishable. First, the Defendant has no interest in the title of the land, because Haydon and Stamas never executed a Purchase and Sales Agreement. Therefore, unlike the seller inGill, Haydon did not repudiate her contractual obligations but had every right, after the option expired, to entertain offers from other prospective buyers. Second, the seller did not cause or contribute to the Defendant's failure to exercise his option to purchase the Property. The Defendant should not have agreed to the length of the option period if he knew his travel plans would make execution of a valid Purchase and Sales Agreement impracticable.[7]
Furthermore, although the Court recognized a valid oral extension of the purchase and sales agreement, it reaffirmed the "heart of the transaction" exception set forth in Berube. See id. at 965. In the instant case, the February 23, 2004 expiration of the option was the pivotal provision of the agreement. The Defendant paid consideration for the Plaintiff to hold the Property off the market from February 9 until February 23, 2004. There is no evidence to suggest that the Defendant paid any additional consideration to extend the Plaintiff's obligation. Given that the length of the option is so essential to the heart of an option contract, any modification of said provision would be required to be in writing.
 Conclusion
The only valid underlying contract is the option agreement. Because this Court has determined that the oral extension of the option is not enforceable, the Plaintiff has fulfilled her promise under the terms of the agreement. The Plaintiff did not enter into a Purchase and Sales Agreement with a third party until after the expiration of the Defendant's option to purchase the Property. As such, there is no basis for the Court to order specific performance. For the same reasons, the Court also rejects the Defendant's counterclaim for breach of contract.
After a review of the relevant evidence, the Court determines that the underlying agreement is an option agreement to purchase real estate in which time was of the essence. Because the timeliness of an option contract is its central component, the expiration date of an option cannot be modified orally. Therefore, the Defendant's request for specific performance is denied and the Plaintiff's request to strike the lis pendens is granted.
The lis pendens filed with the City of Warwick Land Evidence Records is hereby vacated and quashed. The Defendants are ordered to execute all appropriate documents necessary to remove the cloud of title on Plaintiff's real estate. Counsel shall submit appropriate judgment for entry in accordance with this decision.
Plaintiff's request for damages and counsel fees is left open.
[1] At all material times herein, the younger Stamas acted as his father's agent and therefore will not be separately addressed in this decision.
[2] It should be noted that neither party had legal representation at the time the option agreement was signed.
[3] The agreement stated as follows: "This document confirms receipt of $2,000. from Leon Stamus [sic], as a good faith deposit for purchase of Lot # 242, Plat #235 currently owned by:
Purchase price for Lot 242 = $179,000.
Barbara Haydon, of 81 Crestwood Road. (property has ground water analysis by R.I. DEM, dated 4.10.00, copy attached)
Deposit is valid to hold property off the sale market, contingent on a "purchase sales" agreement signed by both parties by February 23, 2004.
Deposit will be returned and property will be placed back on Public market if said "purchase sales" agreement is not executed by 2.23.04."
[4] Defendant admits that he forwarded a check to Caito for $100 made payable to the State of Rhode Island to get the permitting process started. Although he received a bill from Caito for $1500 to compensate him for engineering related work, Defendant has yet to remit payment to Caito. He claims that he was "waiting to see what was going to transpire." Defendant's Deposition p. 39, l. 7-8.
[5] Plaintiff's attorney did not receive a signed Purchase and Sales Agreement from Ms. DiMuro until March 1, 2004.
[6] Even assuming the Court had ruled in the alternative, Ms. DiMuro admitted that she understood that the Plaintiff was anxious to complete the sale of the Property. In her telephone conversation with the Plaintiff, Ms. DiMuro indicated that she would receive the Purchase and Sales Agreement from her client by Wednesday and would immediately forward it to the Plaintiff and Mr. Comery. However, by late Thursday afternoon, neither the Plaintiff nor Mr. Comery had received a copy of the alleged agreement. In fact, Mr. Comery did not receive the agreement until March 1, 2004, the following Monday.
[7] The Defendant's son actually signed the agreement, because the Defendant was in Florida. He admitted that he was unsure whether or not he read the option agreement prior to consulting his lawyer in late February.