SEWERAGE AND WATER BOARD OF NEW ORLEANS v. HOWARD.†

(Circuit Court of Appeals, Fifth Circuit. December 7, 1909.)

No. 1,934.

1. EQUITY (§ 53*)—JURISDICTION—ANCILLARY PROCEEDING—ADEQUATE REMEDY AT LAW.

The fact that a receiver elects to proceed in a matter by an ancillary bill in the suit in which he was appointed does not of itself give jurisdiction in equity where there is an adequate remedy at law.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 53.*]

2. SPECIFIC PERFORMANCE (§ 75*)—INJUNCTION (§ 59*)—CONTRACTS ENFORCEABLE—CERTAINTY—TIME OF PERFORMANCE.

A court of equity will not decree the specific performance of a contract nor grant an injunction to restrain its violation the effect of which will be the same, where the performance must be continuous for an indeterminate term, and the decree will not end the controversy, but make it necessary to retain the bill and supervise the performance indefinitely.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 75;* Injunction, Dec. Dig. § 59.*]

3. INJUNCTION (§ 16*)—EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.

A bill in equity to enjoin the violation of a contract cannot be maintained where it alleges that the violation will result in damages to complainant in a specific sum, and there is no allegation of defendant's insolvency.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 16.*]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Suit in equity by Frank T. Howard, receiver, against the Sewerage and Water Board of New Orleans. Defendant appeals from an order granting a preliminary injunction. Reversed.

The following are copies of the contract, notice, and resolutions referred to in the opinion:

Contract.

"Agreement entered into on this 26th day of December, 1908, between Frank T. Howard, receiver, and the Sewerage and Water Board of New Orleans.

"Whereas, the said receiver is now operating the plant of the late New Orleans Waterworks Company, under authority of the United States Circuit Court for the Eastern District of Louisiana in the case of the New Orleans Water Supply Co. v. City of New Orleans et al., No. 13,332 of the docket of said court, and is furnishing water to consumers under a tariff established by the court; and whereas, the said Sewerage and Water Board expects shortly to supersede the old system of water supply by the new one now being established:

"Now, therefore, it is stipulated and agreed between the parties hereto as follows:

"First. The said receiver shall continue to supply water under the said tariff established by the court as heretofore, up to March 1, 1909, or up to such time as the Sewerage and Water Board shall connect its mains with those of the said late New Orleans Waterworks Company, by a suitable and proper pressure valve—such valve or valves and connections to be made by the said Sewerage and Water Board at its own expense.

"Second. On the 1st day of March, 1909, or as soon thereafter as said Sewerage and Water Board shall have made the connection with a reducing pressure valve or valves as above specified, the said receiver shall turn over the mains,

---

connections, and pipes constituting the distribution system of the late New Orleans Waterworks Company to the said Sewerage and Water Board, which board shall thereafter, at its own cost and expense, furnish water into the mains and pipes of said system through said reducing valve or valves to the water consumers then connecting with said system.

"Third. From and after the 1st day of March, 1909, or from the date said mains and pipes shall be turned over, as above provided, to said Sewerage and Water Board, and so long as there shall be any consumers connected with said system, said Sewerage and Water Board shall charge such consumers of water the full tariff rates established by the said Sewerage and Water Board on the 10th day of December, 1908, and shall account for monthly and pay over to the receiver two-thirds of all gross receipts so collected from consumers, without any deductions on account of operative expenses, or on account of the cost of collection of the water rates.

"Fourth. It is further understood and agreed that the distributive system, the use of which is granted herein by the receiver, includes only the mains, pipes, and connections of the late New Orleans Waterworks Company, and does not include the real estate or the pumping plant and machinery of said company.

"And it is further understood that the said Sewerage and Water Board shall at its own cost and expense make all the repairs to said distributive system which may become necessary to operate said system in accordance with the provisions of this agreement.

"It is further agreed that when all connections shall have been made with waterworks system of said Sewerage and Water Board, and no new consumers shall remain connected with the system of said late New Orleans Waterworks Company, this agreement shall terminate, and said mains, pipes, and connections shall be returned to the receiver.

"This agreement is not to become effective until approved by the court.

"[Signed]                         Sewerage and Water Board,
                                       "By Martin Behrman, President.
                                   "New Orleans Waterworks Co.,
                                       "Frank T. Howard, Receiver."

Notice in Times–Democrat, March 14, 1909.

"Attention.

"Consumers on Pipes of New Orleans Waterworks Co.

"Office of Sewerage and Water Board,
"602 Carondelet Street, March 12th, 1909.

"The Sewerage and Water Board has made connection with and is supplying water into the old pipes of the system of the New Orleans Waterworks Company for the sole and only purpose of allowing the consumers connected with this system a reasonable time in which to make connection with the new water pipes, now supplied with filtered water all over the city.

"The board, by resolution on the 11th instant, directed the general superintendent to limit the time of pumping water into these pipes to Dec. 31, 1909.

"The consumers on the pipes of the New Orleans Waterworks Company are therefore urged and warned to expedite the connection with the new water pipes and thereby prevent congestion at the last moment.

"The board is without funds to pay the cost of making these connections. The property holders are therefore required to make application and the necessary deposit for the connection at the office, 602 Carondelet street, said deposit to be returned when the board is in funds.

"In low pressure areas of the system of the New Orleans Waterworks Company, and in areas where excessive leakage exists or may develop, the general superintendent is authorized to notify the consumers in these areas to make connection with the new system in thirty, sixty or ninety days, as the exigencies of the conditions may warrant the water to be cut off at the expiration of such periods.

                         "[Signed]   Geo. G. Earl, General Superintendent.
"F. S. Shields, Secretary."

Resolutions.

**Extract from Minutes of the Sewerage and Water Board of New Orleans. Regular Meeting, March 11, 1909.**

"On motion, duly seconded, the following resolution was adopted:

" 'In view of the fact that connection is being made with the pipes of the New Orleans Waterworks Co., and water will be supplied thereto for the purpose of allowing the 8,000 or more consumers connected with said system to make connection with the pipes of the new distribution system of the Sewerage and Water Board:

" 'Therefore, be it resolved, that the general superintendent be and is hereby directed to give public notice through the press to the said consumers that water will be pumped into the said pipes of the New Orleans Waterworks Co. only until December 31, 1909, and that all parties connected with the said pipes are notified to connect with the new distribution pipes during the period from this date to December 31, 1909.

" 'Be it further resolved, that in the low pressure areas of the New Orleans Waterworks Company's system, and in areas where excessive leakage may exist or develop, that the general superintendent be and is hereby authorized to notify the consumers who are connected with the pipes in these areas to make connection with the new pipes in 30, 60, or 90 days, as exigencies of the conditions may in his judgment warrant, and at the expiration of such periods that the supply of water being furnished by the Sewerage and Water Board shall be cut off from such areas.'

"Correct extract.                    [Signed]   F. S. Shields, Secretary."

**Extract from Minutes of the Sewerage and Water Board, Regular Meeting, December 10, 1908.**

"On motion, duly seconded, the following resolution was adopted:

" 'Resolved, that the following agreement, entered into between the special counsel of this board and the representatives of the N. O. Water Supply Co., be and the same is hereby approved and ratified, to wit:

" 'Inasmuch as it will take about sixty days to receive and install a pressure-reducing valve before connection can be made from our waterworks system into that of the N. O. Water Supply Co., the said company will continue to operate and to furnish water to parties connected with their mains, until the last day of February, 1909, at the rates of their present tariff. On the 1st day of March, 1909, the said company will turn over their distribution system to this board, and this board will furnish water into said system through said pressure-reducing valve and maintain said system at its expense. From said 1st day of March, 1909, and so long as there will be consumers connected with said old system this board will charge to such consumers the rates established in the tariff this day adopted by this board, and two-thirds of the gross receipts collected from such customers shall be paid monthly to the N. O. Water Supply Co. When all connections shall have been made to the system of the Sewerage and Water Board and no more consumers shall be connected with said old system, the same shall be turned back over to the N. O. Water Supply Co.'

"Correct extract.                    F. S. Shields, Secretary."

Omer Villere, for appellant.

J. D. Rouse and Wm. B. Grant, for appellee.

Before SHELBY, Circuit Judge, and JONES and FOSTER, District Judges.

FOSTER, District Judge. This was a bill in equity, filed by Frank T. Howard, receiver of the New Orleans Waterworks Company, against the Sewerage and Water Board of New Orleans, substantially alleging: That complainant operated a water distribution system to which were connected some 12,000 premises in the city of New Orleans up to March 1, 1909, when same was turned over to respondent

under the terms of a contract, and it was thereafter operated by respondent. That, in violation of the said contract, respondent adopted a resolution, through its board of directors, on March 11, 1909, limiting the time for pumping water into complainant's mains to 30, 60, and 90 days for certain areas, and for the balance to December 31, 1909, and issued and published a general notice to the public, reciting the adoption of said resolution, and urging and warning consumers connected with and taking water from complainant's pipes to make connections with respondent's new pipes, requiring them to make application to respondent, and to make a deposit to cover cost of connections. That, as the statute of Louisiana creating the Sewerage and Water Board, known as Act No. 6, p. 16, of 1899, required respondent to make connections with its own mains, to the edge of the property line, at its own cost, respondent had no right, under the terms of said contract, to cut off and to refuse to supply water to those connected with the distributive system of complainant until such time as it had actually made the new connections. The bill further alleges that complainant is entitled to receive two-thirds of the gross revenues which respondent ought to collect from the consumers connected with his mains during the life of said contract, which will amount to more than $75,000 if respondent shall faithfully keep and perform all its obligations under the contract, but that complainant will suffer a loss of at least 50 per cent. of said amount if respondent is not restrained from doing the said acts complained of. The bill also alleges two specific violations of the contract by refusal to furnish water to intending consumers connected with complainant's pipes, but not actually taking water at the time the contract was entered into.

Copies of the resolution and notice complained of and the contract are annexed to the bill. The bill then prays an injunction, commanding respondent to desist and refrain from refusing to furnish water to any person whose premises were connected with complainant's mains on December 26, 1908, and who still remain connected and desire to take water from said mains until it shall have first made connections with its own pipes, and is ready to furnish water, and that said respondent be further enjoined from carrying into effect its resolution of March 11, 1909.

On this bill a rule nisi issued, and respondent made written return thereto, and also, at the same time, filed a demurrer to the bill, both return and demurrer setting up substantially the same defenses, to wit, that the bill did not state a cause of action; that, if complainant was entitled to any relief in the premises, his remedy was at law, and not in equity; that said contract was ultra vires; and, if not void ab initio for want of authority in respondent to make it, was invalid because not ratified by the New Orleans common council.

The demurrer does not appear to have been formally disposed of, but the cause was heard by the Circuit Court on the bill and exhibits and return to the rule nisi, and thereupon an injunction issued, as follows:

"It is therefore ordered, adjudged and decreed that a writ of injunction issue herein commanding the sewerage and water board of New Orleans, defendant, and all persons claiming to act under its authority, direction, or control, to

SEWERAGE AND WATER BOARD V. HOWARD.

absolutely desist and refrain from refusing to furnish water to any person or persons, corporations, or firms whose premises were connected with the mains and pipes of the late New Orleans Waterworks Company on the 26th day of December, 1908, and still remain so connected, and who desire to take and pay for water from said mains and pipes upon the same terms that said board supplies water from its pipes to its consumers under its tariff of December 10, 1908, until said board shall have made connection with its own pipes and is ready to furnish water, and from carrying into effect its resolution of March 11, 1909, in which it declares its intention to cease supplying water to all consumers connected with the mains and pipes of the late New Orleans Waterworks Company on the 31st day of December, 1909, unless by that time they have made connections with the system of said Sewerage and Water Board, and that defendant remain so enjoined until it shall have made connection with its own pipes, and until there shall remain no consumers connected with the pipes of the said late New Orleans Waterworks Company, who desire to take and pay for water under said tariff, and from refusing to furnish water to any person connected with the mains and pipes of the said late New Orleans Waterworks Company on the 26th day of December, 1908, in the low pressure areas or districts referred to in defendant's resolution of March 11, 1909, who may desire to take and pay for water therefrom under said tariff of December 10, 1908, until defendant shall have made connections with its own mains and pipes and is ready to supply water therefrom. And it is further ordered that the defendant and all those claiming to act under its authority and in its behalf remain so enjoined until further order of this Court."

It is manifest from the allegations and prayer of the bill that, while an injunction is prayed, the specific performance of the contract is sought, and the injunction, in effect, grants such relief. It is also evident the contract is continuing and uncertain as to termination.

Apparently respondent is without funds to make the connections between its own mains and the premises connected with complainant's system, and it is not shown when respondent will have such funds, or that it will ever have them. On the theory of the bill, which seems to have been adopted by the Circuit Court in issuing the injunction, the contract should be kept alive and respondent required to pump water into complainant's mains as long as a single consumer remains connected with complainant's system, and unconnected with respondent's mains. The specific violations of the contract set out by the bill are the refusals to supply water to persons connected with respondent's mains, but not actually consumers at the time the contract was entered into. Clearly the specific enforcement of the contract would require the retention of the bill and supervision of the contract indefinitely.

Furthermore, the bill alleges that complainant will be damaged in a definite sum by the anticipated violation of the contract, and it does not allege the insolvency of respondent, or suggest that, for any reason, damages could not be collected. It is evident that in this case the court cannot make a decree ending the controversy, and, if performance be decreed, the case must remain in court for a long and indeterminate period.

It is further contended on behalf of complainant that the cause involves an accounting and that the rates collected by respondent constitute a special fund, and also that, as the bill is ancillary to the receivership proceedings, equity has jurisdiction at all events. None of these contentions seems to us to be well founded. The proving of damages may be tedious, but is a matter of mere calculation, which the jury can very well do. All the facts as to the number of consumers

connected with the complainant's mains, the rates, and other necessary data are within his knowledge, and require no discovery or accounting by respondent. If the contract be violated, as contemplated, there would be no fund created. Nor would the fact that the receiver had elected to proceed by ancillary bill of itself give jurisdiction in equity. We are of opinion that complainant is not entitled to relief in equity. See Texas & Pacific R. R. v. Marshall, 136 U. S. 395, 10 Sup. Ct. 846, 34 L. Ed. 385; Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955.

These views render it unnecessary to pass upon the other questions raised on the appeal, and, in conformity with them, the judgment of the Circuit Court will be reversed, the injunction set aside, and the cause remanded, with instructions to dismiss the bill.