UNITED CIGARETTE MACH. CO., Limited, v. WINSTON CIGARETTE MACH. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. March 7, 1912.)

No. 1,055.

1. ACCOUNT (§ 17*)—JURISDICTION—ACCOUNTING.

A bill in equity by a buyer of patents covering cigarette machinery, with the exclusive right to sell the same except in the United States and Canada, and with the right to require the seller to construct and deliver machines to the buyer for a specified price, which sets out the contract between the parties, and shows that the buyer has exclusive right to sell the machines except in the United States and Canada, and to construct machines for use except in the United States and Canada, and which gives the buyer the benefit of such exclusive right, and which

shows that the managing officer of the seller sold eight machines in foreign countries and thereby deprived the buyer of the profits therefrom, and that the seller, through its manager, supplied an old machine in violation of the agreement causing damages, and that the buyer is entitled to a lien on the shares of stock registered in the name of the seller and its managing officer, and which prays for injunctive relief and for an accounting for unlawful selling, etc., does not state a cause of action for an accounting either on the theory of mutual accounts or on the theory of complexity.

[Ed. Note.—For other cases, see Account, Cent. Dig. §§ 77–82, 84–88; Dec. Dig. § 17.*]

2. DISCOVERY (§ 19*)—JURISDICTION.

The bill does not show a cause of action in equity for a discovery.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 20–26; Dec. Dig. § 19.*]

3. INJUNCTION (§ 59*)—JURISDICTION—RESTRAINING BREACH OF CONTRACT.

The jurisdiction of equity to restrain a breach of contract depends on the inadequacy of the remedy at law, and a bill in equity by a foreign corporation to restrain a breach of contract by a domestic corporation and its managing officer, personally liable for the wrongs complained of, which alleges the insolvency of the domestic corporation, but which shows that it holds stock of the foreign corporation which has under its charter a lien for liabilities of holders of stock and which does not show the insolvency of the officer, does not state facts justifying relief.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig. § 59.*]

4. CORPORATIONS (§ 306*)—TORTIOUS ACTS OF OFFICERS—PERSONAL LIABILITY TO THIRD PERSONS.

The managing officer of a corporation, who fraudulently violated a contract by the corporation with a third person causing injury to the third person and resulting in profits to the officer, is liable to the third person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. § 306.*]

5. CORPORATIONS (§ 163*)—LIEN ON STOCK AND DIVIDENDS—BONA FIDE PURCHASERS.

The charter of a corporation, which provides that it shall have a first lien on all stock registered in the name of each member for his liabilities to it, and that the lien shall extend to all dividends declared on the stock, gives to the corporation a lien on the stock and dividends, and a member cannot transfer his stock to prevent satisfaction of a pecuniary recovery by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 577, 609–614; Dec. Dig. § 163.*]

6. INJUNCTION (§ 57*)—RESTRAINING BREACH OF CONTRACT—EQUITABLE JURISDICTION.

An injunction will not issue to restrain the breach of a long term contract, since such an injunction is a negative enforcement of specific performance which is denied where performance will be continuous and will require protracted supervision by the court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 111–113; Dec. Dig. § 57.*]

7. CORPORATIONS (§ 169*)—EQUITY (§ 51*)—JURISDICTION—MULTIPLICITY OF SUITS.

A bill by a foreign corporation against a domestic corporation and its managing officer, to restrain a breach of a contract for the sale of patents of machinery with the exclusive right of sale of same except in the United States and Canada, and for the ascertainment of damages for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the breach of the contract committed by the managing officer of the domestic corporation, and for a lien on stock registered in the names of the domestic corporation and its managing officer, which alleges that the officer has sued for dividends on the stock and that he may do so again but does not show that he will institute vexatious litigation, does not state a cause of action for equitable relief to prevent a multiplicity of suits, and the foreign corporation must obtain a judgment at law before it can proceed in equity to enforce its lien.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 577, 620–623; Dec. Dig. § 169;* Equity, Cent. Dig. §§ 167–171; Dec. Dig. § 51.*]

**8.** CORPORATIONS (§ 169*)—JUDGMENT FOR DIVIDENDS—SET-OFF.

Where a foreign corporation, having a first lien on stock registered in the names of each member for liabilities to the corporation, reduces a claim against a domestic corporation and its managing officer holding stock for damages for breach of contract, the judgment can, under Code Va. 1904, § 3298, be set off against the officer's suit at law for dividends.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 577, 620–623; Dec. Dig. § 169.*]

**9.** CORPORATIONS (§ 165*)—LIEN ON CORPORATE STOCK—"LIABILITY."

The charter of a corporation, which declares that it shall have a first lien on all stock registered in the names of each member for his liabilities to the corporation, and that the lien shall extend to all dividends, embraces a demand for damages for breach of contract by a stockholder receiving the stock in consideration that the corporation may purchase at a fixed low price machines to be made by the stockholder; the word "liability" meaning responsibility, or the state of one who is bound in law and justice to do something which may be enforced by action (quoting 5 Words and Phrases, 4111, 4114, 4115).

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 577, 605; Dec. Dig. § 165.*]

**10.** CORPORATIONS (§ 169*)—JURISDICTION—ENFORCEMENT OF LIEN.

The lien given to a corporation by its charter, declaring that it shall have a first lien on all stock registered in the name of each member for his liabilities to the corporation, and that the lien shall extend to dividends declared, is an equitable lien; but where the enforcement of the lien can only arise after the corporation has successfully maintained its claim to damages, which is the primary issue, equity does not have jurisdiction of an action for damages and the enforcement of the lien, though equity will award damages incidental to equitable relief.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 577, 620–623; Dec. Dig. § 169.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Suit by the United Cigarette Machine Company, Limited, against the Winston Cigarette Machine Company and another. From a decree of dismissal, complainant appeals. Affirmed.

J. T. Coleman and A. B. Kimball (Coleman, Easley & Coleman and King & Kimball, on the brief), for appellant.

William P. Bynum (Manly, Hendren & Womble, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and McDOWELL and SMITH, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McDOWELL., District Judge. The appellant was complainant below. The bill cannot be so condensed as to adequately state the case, and it is here set out in full:

"Bill of Complaint

"In the Circuit Court of the United States of America for the Western District of North Carolina.

"United Cigarette Machine Company, Limited, v. Winston Cigarette Machine Company et al.  In Equity.

"To the Honorable Judges of said Court:

"The United Cigarette Machine Company, Limited, a corporation created, organized, and existing under the laws of, and a citizen of, England, brings its bill of complaint against W. T. Brown, a citizen of the state of North Carolina, and residing in the Western district thereof, and the Winston Cigarette Machine Company, a corporation created, organized, and existing under the laws of, and a citizen of, the said state of North Carolina, having its principal office and place of business at Winston, in the Western district of the said state of North Carolina.

"I. And thereupon your orator charges, avers, complains, and says that heretofore, to wit, on the 24th day of August, 1899, the Winston Cigarette Machine Company (hereinafter referred to as the Winston Company) entered into an agreement with your orator whereby the Winston Company sold, assigned, granted, and conveyed to complainant certain schedule patents set forth in a schedule attached to the said agreement, and also each and every other patent relating to or covering cigarette machinery of which the Winston Company was the owner or to which it was entitled, including each and every pending application for such patent or patents, and also and particularly the invention in cigarette machinery known as the Briggs cigarette machine, together with each and all improvements in cigarette machinery which the Winston Company then owned or was entitled to or might thereafter acquire or become entitled to, with the exclusive right to sell, hire, or otherwise dispose of the same or any of them throughout the world, except the United States and Canada, and also the right to apply for and obtain patents covering them or any of them, or any parts thereof, in any country or countries.

"The Winston Company, by the same contract, also granted, sold, and assigned to your orator the complete set of working drawings and patterns of its improved cigarette machinery, and all other drawings and patterns thereof; it being provided, however, that the same should, subject to certain provisions and conditions set out and expressed in said contract, remain in the possession of the Winston Company. And it was further provided that the Winston Company should from time to time, to the extent that such machines should be desired by the plaintiff or its successors and after reasonable notice to do so, construct and deliver, securely packed on board cars at Winston, N. C., complete cigarette machines equipped with latest improvements, for each of which said machines, substantially of the then present type, so packed and delivered, your orator should pay to the Winston Company the sum of $450, with the understanding that should any material additions or improvements of such machines be authorized, your orator should pay a reasonable and fair price therefor in addition to the $450 per machine; the cost of such additions or improvements to be agreed upon between the parties before the same were made. Each machine constructed and delivered as aforesaid was to be in first-class working condition, made of good material and in a workmanlike manner, and should be thoroughly tested by the Winston Company before delivery. Each and every Briggs machine sold or hired by your orator was to be constructed by the Winston Company for the price, and on the conditions, hereinbefore stated; but your orator was to be at liberty, nevertheless, to have constructed elsewhere pieces and parts of such machines if it should desire to do so.

"The Winston Company agreed that the persons from time to time engaged by it to construct and build cigarette machines should at no time furnish any of said machines to any party other than the Winston Company and its

licensees, for use in the United States and Canada, and to your orator and its licensees for use in the rest of the world; and to this end the Winston Company covenanted that it would securely obligate by contract every person engaged then or thereafter in constructing such machines, and that such contracts should inure to the benefit of your orator for the entire world, except the United States and Canada.

"In the event of any breach of the agreement on the part of the Winston Company or its successors in properly constructing and promptly delivering such machines and parts as might be ordered as aforesaid, or in the event of any other breach, your orator was thereupon to have the right to have delivered to it all of said drawings and patterns (which were to embrace the latest improvements), and thereafter your orator or its successors should be at liberty to construct such machines and parts thereof at any other place; but before withdrawing said drawings and patterns, reasonable time was to be given to the Winston Company in which to have duplicate drawings and patterns made to be retained by it, to be used only in constructing machines the use of which was to be confined to the United States and Canada; and no other copies or duplicates of drawings or patterns, or any part thereof, were to be made, or permitted to be made, except with the written consent of your orator.

"It was further provided, among other things, that your orator should succeed to the rights of the Winston Company in certain contracts in said agreement mentioned between the Winston Company and W. C. Briggs, as well as in any other contract or contracts it had or might thereafter acquire with any person, firm, or corporation relating to the acquisition by the Winston Company of inventions in cigarette machines, or by which any person, firm, or corporation should be debarred from or restricted in acquiring or otherwise becoming interested in cigarette machines, or the handling of the same, but with the proviso that your orator should thereby incur no obligation or liability to pay anything on account of any such contract.

"It was further provided in said agreement, in effect, that the Winston Company should account for and pay over to your orator all moneys theretofore received, as well as such moneys as should be thereafter received by or become due to the Winston Company on account of certain machines enumerated in a schedule attached to the said contract and sold by the Winston Company since June 13, 1899; the Winston Company reserving to itself on account of each such machine the cost price thereof of $415 per machine.

"It was further provided in said agreement that if your orator should desire to sue any user of the Briggs machine, it should notify, by letter, the Winston Company, and thereupon the Winston Company should promptly furnish to your orator copies of all papers relating to or evidencing the sale of any machine involved in any such contemplated suit, and in due time should furnish your orator the original papers to the extent needed as evidence in any such suit.

"It was further provided in said agreement that, except as therein otherwise provided, the United States and Canada should be excepted from the operation of the contract, but that all cigarette machines placed by the Winston Company in the United States and Canada should be so placed in pursuance of a contract, distinct in its terms, providing that the parties with whom such machines should be placed should in no event operate the same or permit the same to be shipped outside of the United States or Canada.

"It was further provided in said agreement that the Winston Company should turn over to your orator all letters and other papers giving information as to cigarette machine business and would-be purchasers or hirers thereof, except such papers and letters as relate to the use of the machines in the United States or Canada, and that the Winston Company should thereafter, from time to time, furnish to your orator all letters received by it, and communicate all inquiries made of it, relating to the cigarette machine business for any part of the world outside of the United States and Canada; and further that the Winston Company should forthwith furnish to complainant full particulars as to any machine or machines it may have sold, other than those enumerated in certain schedules attached to the contract, giving the names of the parties to whom sold, their residences, the numbers of the ma-

chines, and the prices at which sold, and that the Winston Company, and all other necessary parties should, from time to time, as requested by your orator and at its instance, execute and do all assurances and things necessary for giving your orator the full benefit of the said agreement.

"It was stipulated in the said agreement that the term 'United States' as used therein should be construed to mean that section of country designated and known as the United States just prior to the late war with Spain, and should not include any of the West Indies, Philippine Islands, or Sandwich Islands.

"The consideration for the said sale and for the covenants entered into as aforesaid by the Winston Company was the sum of £27,000, to be paid and satisfied by the allotment by complainant to the Winston Company, or as the Winston Company should direct, 27,000 shares of £1 each in the capital of the complainant company.

"Your orator further shows that subsequently, to wit, on the 6th day of April, 1900, by a further agreement then made between and duly executed by the said Winston Cigarette Machine Company and your orator, certain modifications and amendments of the said contract of the 24th day of August, 1899, were made, of which mention need be made of only two, namely: (1) That your orator should, in addition to other rights secured to it by the said contract of August 24, 1899, have the right at any time to construct, or have constructed on its own account and for its own purposes, Briggs cigarette machines, as a whole and in parts, in the United States or elsewhere, such machines so constructed to be used outside of the United States and Canada, and, to this end, that your orator should have the right to secure duplicate drawings and patterns of the Briggs machine from the Winston Company; and (2) that the consideration to the Winston Company should be the sum of £25,000, which should be paid and satisfied by the allotment by your orator to the Winston Company, or as it might direct, of 25,000 shares, of £1 each, in the capital of the complainant company, which said shares should be credited as fully paid, and numbered as in said contract provided—the Winston Company having, in consideration of certain amendments of the original contract embodied in the later one, agreed to reduce the consideration £2,000, and subject only to the changes in said later contract particularly specified and expressly authorized, it was stipulated that the original contract should be and remain in full force and effect.

"At the time of the execution of the said later agreement, a certain W. T. Brown was president of the said Winston Cigarette Machine Company, and the said contract was signed and executed by the said company acting by and through the said Brown as president.

"A copy of the said original contract, including the schedules therein referred to and thereto attached, and also a copy of the said later agreement of April 6, 1900—both which contracts were duly signed, executed, and delivered by the parties thereto—are herewith filed as exhibits with this bill and designated respectively 'Exhibit No. 1' and 'Exhibit No. 2.'

"Your orator shows that of the 25,000 shares of its capital which were to be (and were) allotted as aforesaid to the Winston Company, or as it might direct, all except 186 shares (which stand registered in the name of the Winston Company upon the books of your orator) were, by the direction of the Winston Company, allotted to its officers, directors, or other persons, 2,577 of such shares being allotted to the said W. T. Brown and now still standing registered in his name upon the books of complainant company.

"II. Your orator further shows that notwithstanding the solemn agreements aforesaid, the said W. T. Brown, the president, managing director, and chief (if not the sole) business representative, as well as a large stockholder of the said Winston Cigarette Machine Company, and who for years has dominated and directed its affairs—acting in the name of said company, but in his own interest and for his own benefit as well—has sold numerous Briggs cigarette machines to be used, as the said Brown well knew and intended, outside of the United States and Canada.

"As at present advised, your orator can designate only the following such sales: (1) Two, some time in the year 1900, to be used in Porto Rico; (2) two, on or about July 1, 1903, for use in Lima, Peru; (3) one, some time in the

spring or summer of 1904, to the Imperial Tobacco Company, Limited, of St. Johns, Newfoundland, to be used in its factory there; (4) three, on or about July 1, 1904, for use in Valparaiso, Chile.

"Your orator charges that each of the foregoing eight Briggs cigarette machines was sold at a price largely in excess of $500, and that all of them have been paid for by the respective purchasers, and that while such payments may have been made ostensibly to the said Winston Company, nevertheless the said W. T. Brown, individually and personally, got the benefit of the money in whole or in part.

"Your orator charges that the said W. T. Brown and the said Winston Company knowingly, fraudulently, tortiously, secretly, and deceitfully sold and supplied, either in his, the said Brown's, name, or in the name of the Winston Company, the aforesaid eight Briggs cigarette machines to purchasers outside of the United States and Canada, or to be used outside the United States and Canada, thereby depriving your orator of its just rights and profits in the premises and of a material part of the consideration for the shares of its capital standing in the name of the said W. T. Brown and the said Winston Company as aforesaid, upon which shares, as well as upon all unpaid dividends thereon, your orator is given a lien by its charter and articles of association, as hereinafter explained, for any liability of the said Brown or of the said Winston Company to your orator.

"Your orator charges that the said W. T. Brown, fraudulently, and with intent to injure your orator for his own enrichment, procured, directed, and accomplished, by and through his official and representative relations with the Winston Company, the violation of the aforesaid contracts between your orator and the said company, thereby realizing for himself and the said company large profits, to wit, $2.000 on each machine so sold as aforesaid, which profits your orator was entitled to and otherwise would have made and received.

"In this connection your orator avers that the said W. T. Brown has caused the Winston Company to refuse, from time to time, to furnish your orator, and the said company, when applied to by your orator therefor, has refused to furnish to your orator parts or attachments for Briggs cigarette machines. For instance, on one occasion, having furnished your orator a Briggs machine minus certain attachments and parts, to wit, a bronzer and cut-off, your orator's repeated orders for the drawings and patterns of the missing parts, in order that your orator might manufacture them for the machine aforesaid, were entirely ignored. On another occasion your orator ordered of the Winston Company certain repair parts for a Briggs machine, which order was likewise ignored, as was also a subsequent letter of your orator making inquiry in reference to the last-mentioned order.

"As further evidencing the conduct of the said Brown in bringing about and accomplishing the violation and unlawful disregard of the contracts aforesaid by the Winston Company, your orator shows that under the provision of the said contract, whereby the price to be paid by it to the Winston Company for the manufacture of Briggs machines was fixed at $450 per machine, plus the cost of additions and improvements, which cost was to be agreed upon between the parties before such improvements should be made or furnished by the Winston Company, there was an understanding and agreement between your orator and the Winston Company whereby the price to be paid by your orator for the manufacture and delivery on board cars of the latest improved model, type, or style of the Briggs machine should be $500 each; and on or about January 16, 1908, your orator placed with the Winston Company an order for a Briggs machine of the latest improved model, with all the latest improvements, said machine to be shipped to W. R. Grace & Company, of New York City, and to be forwarded by them to Lima, Peru, in response to which order the said W. T. Brown caused to be shipped a machine to W. R. Grace & Co., with sight draft for $500 attached to the bill of lading therefor, which draft was paid and the machine forwarded without being unpacked or examined, to Lima, Peru. Upon its arrival at its ultimate destination, it was discovered that the machine was not the latest improved model, but an old style machine—and probably a secondhand one at that. Of course, the machine was rejected by the

purchaser and thrown back on your orator's hands. Nevertheless, the said W. T. Brown, on behalf of the Winston Company. refused to furnish a new machine of the type or style ordered, in place of the old machine shipped as aforesaid, with the result that your orator had to construct and manufacture a new machine at its own shops in Lynchburg with which to replace the old machine foisted upon it by the said Brown as aforesaid and for which the price of a new machine had been collected as aforesaid. Your orator is out of pocket the $500, paid for the machine, besides $118.13 paid for the transportation of the said machine to Lima and back, and has still on its hands the old machine, which is worthless. The Winston Company, by and through the said Brown, who is its sole business representative, declines and refuses to pay the transportation charges aforesaid and refuses to take back the old machine and refund the price paid for it. Your orator charges that this dishonest and fraudulent conduct on the part, or in the name, of the Winston Company is in truth and in fact the fraud of the said Brown as well, and that he was—in part, at least, if not altogether— the beneficiary.

"Your orator is advised and insists that the said Brown, as well as the Winston Company, is liable and responsible to it to the extent of the profits realized upon the illegal and fraudulent sales aforesaid of Briggs machines and also for the $618.13 out of which your orator was defrauded as aforesaid by palming off on it the old machine instead of the new one ordered; and that your orator has a lien, as hereinafter pointed out, upon the shares of its capital registered in the name of the said Brown and the said Winston Company as aforesaid and upon the unpaid dividends thereon.

"III. Your orator further shows that section 24 of its charter or articles of association is in the following words, to wit:

" '24. The company shall have a first and paramount lien upon all the shares registered in the name of each member (whether solely or jointly with others) for its debts, liabilities and engagements, solely or jointly with any other person to or with the company, whether the period for the payment, fulfilment or discharge thereof shall have actually arrived or not. And such lien shall extend to all dividends from time to time declared in respect of such shares.'

"Your orator is advised and insists that by reason of the aforesaid liability to it of the said Brown, and the said Winston Company, and by reason of the provision aforesaid of your orator's charter or articles of association, your orator is entitled to a lien upon the shares registered as aforesaid in the names of the said Brown and the said Winston Company, as well as upon all the dividends thereon declared from time to time and unpaid, and is also entitled to subject to the lien aforesaid, for the liability aforesaid, the shares aforesaid owned by and registered in the names of the said Brown and the said Winston Company, as well as all the unpaid dividends declared on or in respect of such shares.

"Your orator is informed, believes, and charges that the eight Briggs cigarette machines sold as hereinbefore stated, in violation of the contract, original and supplemental, between your orator and the Winston Company, were sold at a price averaging $1,500, or $2,000 each, and it may be at a larger price; that the said defendants realized a profit of from $1,000 to $1,500 on each of the said eight machines, and it may be more; that but for the unlawful sales of the said machines by the said defendants as aforesaid, your orator, as it had the exclusive right to do, could and would have sold the said machines to the purchasers to whom the said defendants sold them, and could and would have realized the same or greater profits from such sales; that the liability of the said defendants in the premises to your orator largely exceeds $2,000. even if the said defendants have sold, in violation of the contracts aforesaid, only the eight machines aforesaid.

"Your orator is informed, believes, and charges that the Winston Cigarette Machine Company is financially irresponsible, and that the said Brown has used the name of the said company, in making sales of Briggs machines in violation of the contracts aforesaid, as a cloak for the dishonest disregard of the said contracts for his own benefit; and as your orator believes and charges, unless restrained by the court, such sales will continue to be made to your orator's irreparable injury.

"IV. Your orator shows that it has retained and refused to pay to the said defendants certain dividends declared upon the shares of your orator's capital owned by them or standing in their name on your orator's books; that heretofore, to wit, in June, 1908, the said W. T. Brown instituted an action at law against your orator in the corporation court for the city of Lynchburg, Va., for the recovery of certain of the dividends which had been theretofore declared upon the shares aforesaid standing in his name, which dividends your orator had withheld and refused to pay; that your orator, being advised that it could not assert in the said action at law its aforesaid lien upon the said shares and the dividends declared in respect thereof, suffered judgment for the said dividends to go against it by default, and then sought by a bill in equity in the said corporation court for the city of Lynchburg, Va., to subject the said dividends, for which the said Brown had recovered judgment against your orator as aforesaid, to the lien thereof given by your orator's articles of association as aforesaid, but the said Brown being a nonresident of the state of Virginia, and declining to appear except specially, for the purpose of challenging the jurisdiction of the court, the said court was of the opinion and held that it was without jurisdiction to enforce the lien aforesaid, and accordingly dismissed your orator's bill upon tha* *sole* ground—the result being that your orator was compelled to pay the judgment which said Brown had recovered by default as aforesaid.

"Since the recovery of the judgment aforesaid, other dividends have been declared upon the shares of your orator's capital, and the said Brown is demanding that your orator pay to him the dividends upon the said shares standing in his name as aforesaid, and doubtless he will proceed against your orator by another action at law in the corporation court of Lynchburg, Va., for the recovery of a judgment for the dividends declared subsequently to the institution of his former action, unless proceedings be instituted by your orator, in a court of equity having jurisdiction of the said Brown, to enforce its lien aforesaid upon the shares of the said Brown and upon the unpaid dividends thereon.

"V. Forasmuch as your orator is without remedy save in a court of equity, where alone such matters are cognizable and relievable, and to the end that the said defendants may severally make full, true, direct, and perfect answers to all the several averments in this bill, as well as to the several specific interrogatories numbered, set forth, and written at the foot of this bill—but not under oath which is hereby expressly waived—your orator prays:

"(1) That the said defendants, and each of them, their agents and representatives, respectively, may be perpetually enjoined and inhibited from hereafter selling to be shipped or used outside of the United States and Canada, as in the said contracts defined, any Briggs cigarette machines, in violation of the said contract.

"(2) That the liability of the defendants to your orator on account of the hereinbefore recited premises, and the hereinbefore mentioned unlawful sales of Briggs cigarette machines, may be fixed, ascertained, and determined by the court.

"(3) That the aforesaid shares of your orator's capital owned by or registered in the names of the defendants respectively, together with all unpaid dividends which have been heretofore at any time declared upon the said shares, or which may hereafter during the progress of this suit and before final decree be declared upon the same, may be appropriately subjected to your orator's lien, by reason of the aforesaid provision of its charter or articles of association, upon the said shares and dividends.

"(4) That, meanwhile, the said defendants and each of them may be enjoined and inhibited from instituting, prosecuting, or maintaining any action, suit, or proceeding against your orator in any other court for the recovery of the unpaid dividends which have been heretofore at any time *been* declared upon the said shares, or which may hereafter, during the progress and pendency of this suit and before final decree, be declared upon the same.

"(5) That your orator may have a proper writ of subpœna directed to the said W. T. Brown and the said Winston Cigarette Machine Company commanding them and each of them, at the proper time and place and under proper penalty, to appear and make full, true, direct, and perfect answers to all and singular the several averments of this bill, and to perform and abide such orders and decrees as may be passed and pronounced by the court in the progress of this cause.

"(6) That your orator may be granted and afforded all such other, further, and general relief in the premises as the nature of its case may require and to the court shall seem meet and appropriate.

"And your orator will ever pray, etc.

"The said defendants are, and each of them is, required to answer the following interrogatories numbered respectively 1, 2, 3, 4, 5, 6, and 7:

"(1) State how many Briggs cigarette machines have been sold by or in the name of the Winston Cigarette Machine Company since the 24th day of August, 1899, or placed by or in the name of the said company in the United States and Canada since the said 24th day of August, 1899; to whom sold, or with whom placed, giving the date of each such sale or placing, and the residence of the party or parties to whom sold or with whom placed, and the contents of any contract or contracts, in pursuance of which any such machine so sold or placed since the date aforesaid may have been sold or placed, with reference to operating any such machine or machines, or permitting the same to be shipped, outside of the United States and Canada.

"(2) State whether or not during the year 1900, or at any time since the 24th day of August, 1899, you, the Winston Cigarette Machine Company, or you, W. T. Brown, as agent, officer, or representative of the said company, or acting in its name, sold, directly or indirectly, any Briggs cigarette machines to be shipped to or used in Porto Rico, or which were in fact shipped to or used in Porto Rico, giving the dates, the names, and residences of the person or persons to whom any Briggs cigarette machines were so sold, shipped, or consigned, and the price or prices obtained therefor.

"(3) State whether or not in the year 1903, or at any time since the 24th day of August, 1899, you, the Winston Cigarette Machine Company, or you, W. T. Brown, acting as agent, officer, representative of, or in the name of, the Winston Cigarette Machine Company, sold, directly or indirectly, any Briggs cigarette machines to be used in Lima, Peru, or which were in fact shipped to Lima, Peru, or used there, giving the number of the machines, the date of the transaction or transactions, the name of the purchaser or purchasers, consignee or consignees, and the price at which any such machine or machines were sold.

"(4) State whether or not in the year 1904, or at any time since the 24th day of August, 1899, you, the Winston Cigarette Machine Company, or you, W. T. Brown, as agent, officer, or representative of, or acting in the name of, the Winston Cigarette Machine Company, sold to the Imperial Tobacco Company, Limited, of St. Johns, Newfoundland, or to any other person to be used in Newfoundland, any Briggs cigarette machines, giving the date of any such sales, the name of the purchaser or purchasers, and the amount for which any such machine or machines were sold.

"(5) State whether or not during the year 1905, or at any time since the 24th day of August, 1899, you, the Winston Cigarette Machine Company, or you, W. T. Brown, acting as agent, officer, or representative of the said Winston Cigarette Machine Company, or acting in its name, sold any Briggs cigarette machine or machines for use in Lima, Peru, or which were in fact afterwards shipped to Peru, giving the date of any such sales or shipments, the name of the purchaser or purchasers, consignee or consignees, and the price for which such machine or machines were sold.

"(6) State whether or not you, the Winston Cigarette Machine Company, or you, W. T. Brown, as agent, officer or representative of the Winston Cigarette Machine Company, or otherwise acting in its name or in its behalf, at any time since the 24th day of August, 1899, sold any Briggs cigarette machines to be shipped or used outside of the United States and Canada, or which were shipped or used outside the United States and Canada, giving the names of all such purchasers or consignees, or any such, the date

of such transactions or shipments, and the price obtained for each such machine.

"(7) Please produce and file any and all documentary evidence or papers in your possession or control, or in the possession or control of either of you, with reference to any such sale or sales, or shipment or shipments, for use or to be shipped outside of the United States and Canada, including all correspondence between you, or either, of you. and any purchaser or consignee of any Briggs cigarette machine or machines outside of the United States and Canada, and any contract that may have been entered into between the Winston Cigarette Machine Company, in its name or on its behalf. and such consignees or purchasers, or any such, with reference to the use or shipment of such machine or machines outside of the United States and Canada."

The trial court dismissed the bill without prejudice for want of equity cognizance.

[1] We find no ground for sustaining equity jurisdiction on the theory of a right to an accounting. The bill discloses no mutual accounts in the proper sense of the term (3 Pomeroy Eq. Jurisp. [2d Ed.] § 1421), and there is no such intricacy or complexity of accounts alleged as to give equity jurisdiction.

[2] Nor is such showing made of the need of a discovery as to give equity jurisdiction, even in the light of Carpenter v. Winn, 221 U. S. 533, 539, 31 Sup. Ct. 683, 55 L. Ed. 842; Russell v. Clark, 7 Cranch, 69, 91, 3 L. Ed. 271; U. S. v. Bitter Root Co., 200 U. S 451, 472, 475. 26 Sup. Ct. 318, 50 L. Ed. 550; 1 Pom. Eq. Jurisp (2d. Ed.) § 229.

[3] The prayer for injunction to restrain the alleged breaches of contract next deserves consideration. The test of equity jurisdiction in cases such as this is the inadequacy of the remedy at law. 3 Pom. Eq. § 1341. The only suggestion of inadequacy of the legal remedy lies in the allegation that the Winston Company is insolvent. One of the defendants, Brown, is not alleged to be insolvent. The one that is alleged to be insolvent stands on the books of complainant as the owner of 186 shares of the capital stock of the complainant company.

[4] The liability of Brown to the complainant, if the allegations of the bill be sustained, has not been questioned and is supported by an array of authority. See, for instance, Angle v. R. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; 38 Cyc. 509; Employers' Club v. Blosser, 122 Ga. 509, 50 S. E. 353, 69 L. R. A. 90, 106 Am. St. Rep. 137, 2 Ann. Cas. 694; Haskins v. Royster, 70 N. C. 601, 16 Am. Rep. 780; Doremus v. Hennessy, 176 Ill. 608, 52 N. E. 924, 54 N. E. 524, 43 L. R. A. 797, 802, 68 Am. St. Rep. 203; Morgan v. Andrews, 107 Mich. 33, 64 N. W. 869; 10 Cent. Dig. Conspiracy, § 7 et seq.; 4 Dec. Dig. Conspiracy, § 8; Motley v. Detroit Co. (C. C.) 161 Fed. 389; 2 Addison Torts, 740; 30 Cyc. 177, 178; 8 Cyc. 660; 4 Ency. Pl. & Pr. 740; Raymond v. Yarrington, 96 Tex, 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914; Martens v. Reilly, 109 Wis. 464, 84 N. W. 804.

[5] As will be hereafter shown, complainant has a lien on the stock of the Winston Company, and on dividends accruing thereon, reserved

in its articles of association.  In 2 Cook Corp. (5th Ed.) § 523, it is said:

> "When a lien is expressly given to the corporation by its charter or by statute, all persons purchasing the stock are affected by the statute and must take notice of it.  A statutory lien need not be set out in the certificate of stock in order to give notice to the transferee."

See, also, 10 Cyc. 585.

To the extent of the value of the shares held by the Winston Company, therefore, that defendant is not insolvent; and it cannot by transfer of its shares prevent satisfaction of a pecuniary recovery against it by complainant.  We find in the case before us no such inadequacy of the remedy at law as would warrant injunction.

[6] Under the circumstances of this case, another reason for refusing an injunction lies in a rule, to which there are exceptions not here of interest, that an injunction will not be issued to restrain a breach of a long term contract.  The contract at bar is without time limit.  An injunction to prevent breaches of contract is frequently a negative enforcement of specific performance.  3 Pom. Eq. § 1341.  Specific performance is frequently denied of contracts "whose performance would be continuous and would require protracted supervision and direction."  Id., § 1405, note p. 2167.  See, also, Strang v. Railroad Co., 101 Fed. 511, 517, 41 C. C. A. 474; Ross v. Railroad Co., Woolw. 26, 20 Fed. Cas. 1245, 1250; Texas & P. R. Co. v. Marshall, 136 U. S. 393, 405, 10 Sup. Ct. 846, 34 L. Ed. 385; Marble Co. v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Shubert v. Woodward, 167 Fed. 47, 56, 57, 92 C. C. A. 509; Sewerage Board v. Howard, 175 Fed. 555, 559, 99 C. C. A. 177; Berliner Co. v. Seaman, 110 Fed. 30, 34, 49 C. C. A. 99; General Electric Co. v. Westinghouse (C. C.) 144 Fed. 458, 462.

[7, 8] Equity jurisdiction to prevent a multiplicity of suits seems to us to be also wanting.  The fact that by the decree below complainant is confronted by the necessity of recovering judgment at law before it can proceed in equity to enforce its lien presents no case of multiplicity of suits within the correct meaning of the term.  It is but the usual course of a claimant to damages that he recover judgment at law and thereafter enforces the lien he may acquire by suit in equity.  The fact that Brown has heretofore sued for dividends and that he may do so again is also not sufficient.  Once complainant has reduced its claim for damages to judgment, such judgment can be set off against Brown's possible suit at law for dividends in the law court in Virginia.  Section 3298, Code Va.; 5 Rob. Pr. 964; 1 Barton Law Pr. (2d. Ed.) 510.  Moreover, the mere fact that Brown will "doubtless" sue again for dividends is not enough.  The right of complainant to damages is resisted and has not been adjudicated.  The case is analogous to that of complainant seeking relief from anticipated repeated actions of ejectment where complainant's title has not been established at law.  "In such cases * * * equity will not interfere on behalf of plaintiff * * * until the plaintiff's title has been sufficiently established by the decision of at least one action

at law in his favor." 1 Pom. Eq. § 253. The same author says (1 Pom. § 254):

"* * * A court of equity will not exercise jurisdiction on this particular ground. unless its interference is *clearly necessary* to promote the ends of justice and to shield the plaintiff from a litigation which is *evidently vexatious.*"

In 1 High on Injunctions (2d Ed.) § 61, it is said:

"Equity will interfere * * * to restrain useless and vexatious litigation. * * *"

The facts asserted in the bill do not warrant a belief that Brown will institute vexatious litigation. See, also, Boise Co. v. Boise City, 213 U. S. 276, 286, 29 Sup. Ct. 426, 53 L. Ed. 796; 22 Cyc. 769. It has been well said that:

"Mere apprehensions or fears on the part of the person seeking relief that the defendant may institute actions against him in the future will not warrant a court of equity in enjoining the bringing of such actions." 1 High, Injunc. § 64.

The bill here asserts apprehension on complainant's part, but does not allege threats by Brown.

There are no allegations in the bill charging that complainant has now a lien on shares of its stock heretofore transferred by the Winston Company to others than Brown. Consequently multiplicity of suits cannot be predicated on the theory that complainant now has a lien on stock originally issued to the Winston Company and transferred to others than Brown prior to the filing of this bill.

[9] We now reach the ground for equity jurisdiction most strongly relied upon by complainant. The bill asserts that complainant has a lien on the shares of stock owned by the defendants and on dividends' due and to become due to them and prays for the enforcement of this lien. The language of the articles of association of the complainant corporation is:

"The company shall have a first and paramount lien upon all the shares registered in the name of each member * * * for his debts, liabilities, and engagements * * * to or with the company, whether the period for the payment, fulfillment, or discharge thereof shall have actually arrived or not. And such lien shall extend to all dividends from time to time declared in respect of such shares."

The right to reserve a lien by the charter or articles of association of a corporation is not questioned. 2 Cook Corps. (5th Ed.) § 520 et seq.; 2 Thomp. Corps. §§ 2322, 2327; 3 Thomp. Corps. § 3247; 10 Cyc. 580; Union Bank v. Laird, 2 Wheat. 390, 4 L. Ed. 269; Bohmer v. Bank, 77 Va. 445.

That the lien here reserved embraces a demand for damages such as is here asserted is questioned; but we are of opinion that it does. The language used is too broad to be restricted to mere engagements to pay subscriptions to the stock of the company. "Liability" is an exceedingly comprehensive term. Bouvier defines it as:

"Responsibility; the state of one who is bound in law and justice to do something which may be enforced by action."

See, also, 5 Words and Phrases, 4111, 4114, 4115.

Moreover, we have nothing in the record before us on which to found a supposition that the incorporators of the complainant company contemplated only the ordinary subscriptions to its stock payable in money. The stock held by the defendants was issued in consideration that the complainant company should have, inter alia, the right to purchase at a fixed low price machines to be made by the Winston Company and the sole right to sell them except in the United States and Canada. It may even be that no issues of stock were contemplated except under similar circumstances, or that at least a large proportion of the stock was intended to be so issued. And if contracts such as that which is set up at bar were contemplated by the incorporators, it is not improbable that the word "liabilities" was used for the very purpose of embracing just such a claim as is here asserted. But, in any event, the word is too broad to be restricted to obligations fixed in amount by agreement of the parties or by judgment. In 25 Cyc. 223, the word "liability" is defined as:

"A broad term; [which] may be employed as meaning a state of being liable, * * * responsibility; * * * the condition of being actually or potentially subject to an obligation. * * *"

In Rapelje & Lawrence Law Dict. it is said:

"It is used either generally, as including every kind of obligation, or in the more special sense to denote inchoate, future, *unascertained,* or imperfect obligations, as opposed to '*debts*,' the essence of which is that they *are ascertained* and certain." 25 Cyc. 223, note.

In Lattin v. Gillette, 95 Cal. 319, 30 Pac. 546, 29 Am. St. Rep. 115, it is said:

"The word 'liability' * * * is the condition in which an individual is placed *after a breach of his contract,* or a violation of any obligation resting upon him." 18 Am. & Eng. Ency. (2d. Ed.) note p. 848.

See, also, Cochran v. U. S., 157 U. S. 296, 15 Sup. Ct. 628, 39 L. Ed. 704. As one of the commonest uses of the word "liability" is to express an obligation or responsibility which may be enforced by action, this word must be held to embrace an unadjudicated demand for damages. It seems to us therefore that the language quoted was intended to and does embrace the liability here asserted and does give a lien on the stock and dividends as is alleged.

[10] The lien thus given is an equitable lien (Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 41 L. Ed. 865; 3 Pom. Eq. § 1235), and the fact that it is enforceable only in equity gives to the contention now under consideration such force as it possesses. From such examination as we have been able to make of the authorities it would seem that an unadjudicated demand for damages which is secured by lien is quite unusual. While there may be such cases reported, we have failed to find any decided case in which this exact combination of facts actually existed. The fact that there is equity jurisdiction in the federal courts to enforce mortgages for future advances (Jones v. Guaranty Co., 101 U. S. 622, 25 L. Ed. 1030), to enforce an equitable lien to secure such advances (Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865), and to enforce mechanic's liens (Sheffield Co. v. Witherow, 149 U. S. 574, 579, 13 Sup. Ct. 936, 37 L. Ed. 853;

Idaho Co. v. Bradbury, 132 U. S. 509, 515, 10 Sup. Ct. 177, 33 L. Ed. 433), is not sufficient to guide us here, for in all of those cases the complainant was a contract creditor and not a mere claimant of damages. This is also true as to Seymour v. Freer, 8 Wall. 202, 19 L. Ed. 306; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753; Wehner v. Bauer (C. C.) 160 Fed. 240; and George v. Wallace, 135 Fed. 286, 292, 68 C. C. A. 40—in which last case it is said:

"A suit for the enforcement of a lien or for the enforcement and administration of a trust is one peculiarly of equitable cognizance, and may be maintained by a *contract creditor* whose claim has not been reduced to judgment."

In Case v. Beauregard, 101 U. S. 688, 691 (25 L. Ed. 1004), it was said:

" *  *  * It may be said that whenever a creditor has a trust in his favor or a lien upon property for the *debt* due him he may go into equity without exhausting legal processes or remedies."

In Jackson v. Bell, 31 N. J. Eq. 554, 558, it is said that:

"A claim for uncertain and unliquidated damages is not a debt."

It is highly probable that the word "debt" in the foregoing quotation from the Supreme Court was not used as including an unadjudicated demand for damages, for the case before it (99 U. S. 119, 25 L. Ed. 370) was that of a contract creditor.

Lilienthal v. McCormick, 117 Fed. 89, 98, 54 C. C. A. 475, and Witz v. Mullin, 90 Va. 805, 807, 20 S. E. 783, are cases which may be thought to suggest inferentially that equity jurisdiction exists to enforce a lien securing a claim for damages. But in neither was this question actually decided, and in the latter Judge Lewis said:

"It is certainly a proposition not to be disputed that a claim to damages for a breach of contract, merely sounding in damages, is not a fit subject for the jurisdiction of a court of equity."

In Oelricks v. Spain, 15 Wall. 211, 228 (21 L. Ed. 43), it is said:

"Besides, there is an element of trust in the case, which, wherever it exists, always confers jurisdiction in equity."

But this was not a suit to enforce a claim for damages, and the ground of equity jurisdiction chiefly relied upon was the equity to prevent multiplicity of suits. Clews v. Jamieson, 182 U. S. 461, 481, 21 Sup. Ct. 845, 45 L. Ed. 1183, was a suit in which damages for breach of contract were sought. But in the opinion it is said:

"Upon all the facts we think that the jurisdiction of the court was plainly established *because* under the circumstances the complainants had no adequate and full remedy at law."

It is certainly true that equity will award damages as incidental to equitable relief. 2 Story Eq. Jurisp. (6th Ed.) §§ 794, 799; Ferson v. Sanger, 8 Fed. Cas. 1165, 1168; Magic Co. v. Elm City Co., 16 Fed. Cas. 403; Burdell v. Comstock (C. C.) 15 Fed. 395; Insc. Co. v. Garrett, 125 Fed. 589, 593, 60 C. C. A. 395; Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183.

In the case at bar it is clear that the demand for damages is not

incidental to the equitable remedy of enforcement of complainant's lien. The prayers for injunction, discovery, and accounting not being well founded, the claim for damages is the principal demand, and enforcement of the lien is incidental and auxiliary thereto. Indeed, the right to the enforcement of the lien can only arise after complainant has successfully maintained its claim to a right to damages. If the trial court had taken jurisdiction, it would have been in order to award damages primarily and not incidentally. The jurisdiction therefore cannot possibly be maintained on the theory that damages would be here awarded as incidental to the equitable relief prayed. And this conclusion leads to the further conclusion that there is no equity jurisdiction here because the case is in chief a demand for damages, such as is peculiarly appropriate to the jurisdiction of the law court, with an equitable feature which is merely auxiliary and incidental to the demand for damages. The bill presents no equity to avoid multiplicity of suits, no equity for discovery, accounting, or injunction. Therefore the doctrine that the equity court having jurisdiction for one purpose will do complete justice goes not so far as to embrace this case, as in it the sole right to equitable relief is dependent on and merely auxiliary to a disputed demand for unadjudicated damages.

In Swan Co. v. Frank, 148 U. S. 603, 609, 612, 13 Sup. Ct. 691, 693 (37 L. Ed. 577), complainant asserted in equity an unadjudicated demand for damages against stockholders of corporations who held funds alleged to be impressed with a trust in favor of complainant. The court said:

"The theory of the bill is that the assets of the vendor corporations which have been distributed to and received by the defendants as stockholders constitute a *trust fund* for the payment of all debts and demands against the companies, and may therefore be followed in the hands of, and recovered from, such stockholders, to the extent necessary to discharge valid claims against the corporations from which they were received. The funds sought to be reached are undoubtedly applicable, under proper proceedings against all necessary parties, to the payment, so far as may be needed, of outstanding indebtedness against the corporations which distributed the same; but the difficulty here is that the complainant has not adopted the requisite and necessary procedure to subject said funds thereto. It has no judgment against the corporations by which it was defrauded, nor are such corporations made parties defendant to the suit or brought before the court. * * *

"We are also clearly of opinion that the court below was correct in sustaining the demurrer to the bill upon the other ground assigned, that the complainant had not previously reduced its demand against the vendor corporations to judgment. That claim was purely legal, involving a trial at law before a jury. Until reduced to judgment at law, it could not be made the basis of relief in equity. This is well settled by the decisions of this court in Taylor v. Bowker, 111 U. S. 110 [4 Sup. Ct. 397, 28 L. Ed. 368]; National Tube Works Co. v. Ballou, 146 U. S. 517, 523 [13 Sup. Ct. 165, 36 L. Ed. 1070]; and Scott v. Neely, 140 U. S. 106, 115 [11 Sup. Ct. 712, 35 L. Ed. 358]. In this latter case the subject is fully reviewed and the question settled so far as the federal courts are concerned."

If the Supreme Court, in deciding this case, regarded the claim of the complainant as secured by a trust, or a right analogous thereto, this case is conclusive of the case before us. The language of the court indicates an opinion that the trust existed. If the court had regarded a trust merely as a right presently enforceable in equity, it

would probably have refused jurisdiction with the simple declaration that no trust existed in favor of a mere claimant of damages. But it is not impossible to conceive of a trust enforceable only after the beneficiary has taken some preliminary proceeding, and the opinion in question strongly suggests that such was the theory of the court. The lien of a vendor exists before the purchase money secured thereby becomes due, although no right to enforce the lien arises until after default. The trust created by an ordinary deed of trust exists from the delivery of the deed, although the right to sue for its enforcement does not exist until the obligation secured thereby has been broken.

The decree below must be affirmed at the cost of appellant.
Affirmed.